[No. 9522. Department Two. March 28, 1912.]

MAUD I. HETRICK, *Respondent*, v. CHARLES WESLEY SMITH, *Appellant*, MAUD I. HETRICK, INCORPORATED, *et al.*, *Respondents.*[1]

ATTORNEY AND CLIENT—DUTIES—CONVERSION—BY TRUSTEE—EVIDENCE—SUFFICIENCY. An attorney holding stock in a corporation as a trustee for his client and to indemnify him upon his indorsement of a note, is guilty of a conversion thereof, where he transferred part of his stock to a business associate, called a meeting of the stockholders, ousted his client from office, organized a new corporation, and transferred to it all the assets of the old corporation by voting the stock; his acts being construed most strongly against him, and the burden being upon him to show that his dealings were free from all reasonable grounds of suspicion.

TROVER AND CONVERSION—DAMAGES—CORPORATE STOCK—VALUE—EVIDENCE—ADMISSIBILITY. Upon a conversion of all the stock of a private corporation, which had no regular market value, its value may be proven by showing the value of the property and business of the corporation at the date of the conversion over and above its liabilities, to be determined by the value of the stock on hand, rather than the book value of the stock.

SAME. In such a case, the accounts receivable should be figured at their face value, where the defendant wrongfully converting the stock notified plaintiff not to make any attempt to collect the accounts.

SAME—DAMAGES—EVIDENCE. In an action for conversion of corporate stock, where the plaintiff offered no evidence of the value of the property of the corporation, the value may be assumed from an inventory of the merchandise on hand near the date of the conversion, where two witnesses testified to its correctness and the actual value.

HUSBAND AND WIFE—SEPARATE PROPERTY OF WIFE—EVIDENCE—SUFFICIENCY. In an action by a wife for conversion of stock held in trust for her by defendant, the stock is sufficiently shown to be separate property where she so testified, and all of the dealings of the trustee had been with her individually.

Appeal from a judgment of the superior court for King county, Carey, J., entered October 28, 1910, upon findings

[1]Reported in 122 Pac. 363.

in favor of the plaintiff against one of the defendants, in an action for an accounting.    Modified.

*McClure & McClure* and *J. A. Stratton,* for appellant.

*Josiah Thomas,* for respondent Hetrick.

ELLIS, J.—This action was brought by Maud I. Hetrick against Charles Wesley Smith, Maud I. Hetrick, Incorporated, Minnie C. Ward, Mary B. Jones, and Ward & Jones, a corporation, for an accounting for the value of the capital stock of the corporation, Maud I. Hetrick, Incorporated, which it is claimed the defendant Smith held in trust for the plaintiff and converted to his own use about June 1st, 1909. It is claimed that by this conversion he wrongfully secured full control of the corporation and full possession of all of its assets, and on August 12, 1909, sold the same to the defendants Ward & Jones, a corporation, the stock of which last named corporation was owned, one-half by the defendant Smith, and one-fourth each by the defendants Ward and Jones.    The cause was tried to the court without a jury. The court made findings in favor of the plaintiff and entered judgment against the defendant Smith for $1,400 and costs, dismissing the action as to the other defendants.    From that judgment, the defendant Smith has appealed.

The court found that the defendant Smith, an attorney in active practice of his profession in the city of Seattle, was employed by the plaintiff as her attorney and counsellor about February 4, 1909; that prior to that time the plaintiff had been in the retail millinery business in Seattle, and so continued up to February 12, 1909, and at that time owned a stock of millinery goods and fixtures of a reasonable value of $1,100; that she explained to the defendant Smith all matters in connection with her millinery business, and he advised her to incorporate; that she explained to him that she did not have cash to spend in incorporating, and was putting proceeds of sales back into the business, purchasing more goods; that Smith told her he would borrow for her

from the National Bank of Commerce, of Seattle, $200, and at his suggestion she signed a note to the bank for $200, which Smith endorsed; that, on or about February 12, 1909, the millinery business was incorporated as Maud I. Hetrick, Incorporated, with a capital stock of $1,000 in 100 shares, of a par value of $10 each; that the $200 proceeds of the note was deposited to the credit of the corporation; that the plaintiff turned over all of her goods and fixtures to the corporation in full payment of the entire capital stock; that only one share of the stock was issued to the plaintiff, and the other ninety-nine shares were issued to the defendant Smith in trust for the plaintiff, and to indemnify Smith against his endorsement of the note, and also to protect him in his compensation for his services; that the plaintiff was a trustee, vice president, secretary and manager, and the defendant Smith was a trustee, president and treasurer of the corporation; that it was agreed that all moneys coming into the hands of the corporation were to be accounted for to the defendant Smith, and by him deposited in the National Bank of Commerce, and checked out by him as treasurer as necessary in conducting the business of the corporation; that he was to act as treasurer until he was relieved from any liability on account of his indorsement of the plaintiff's note and compensated in full for his services as attorney for plaintiff and the corporation; that on his being released from any obligation on the $200 note and being paid for his services, the ninety-nine shares of stock were to be returned to the plaintiff, and that the plaintiff was to receive a salary of $200 per month for her services as manager of the corporation. The court further found that the defendant Smith, on or about May 31, 1909, while acting as attorney and legal adviser for the plaintiff, wrongfully and unlawfully converted the ninety-nine shares of the capital stock of the corporation which he held in trust for plaintiff, as well as its business, goods, fixtures and earnings, to his own use; that the value of these shares and of the one share held by plaintiff, as

shown by the books of the corporation at the time of the conversion, after paying all of the obligations and debts of the corporation, including the compensation of the defendant Smith, and deducting all moneys withdrawn by the plaintiff, was the sum of $1,400; that the $200 note of the plaintiff, endorsed by the defendant Smith, had been paid out of funds belonging to the corporation prior to May 31, 1909, and the defendant Smith had been released from all liability by reason of his endorsement; that the capital stock of the corporation, Maud I. Hetrick, Incorporated, was owned by the plaintiff as her separate property. These findings were all excepted to by the defendant Smith, and the errors assigned are mainly directed against them as being contrary to the evidence.

We have examined the voluminous evidence with much care, but a discussion of it in detail would be a useless task. We are satisfied that the court's findings, save one, are sustained by a preponderance of the evidence. There are but three questions raised by the assignments of error that we deem it necessary to discuss.

(1) The finding that the appellant, on May 31, 1909, converted the 99 shares of capital stock to his own use, is assigned as error. It must be borne in mind that the relation of the parties was that of attorney and client, trustee, and *cestui que trust*. The only interest appellant had in the stock was as security against his endorsement of the respondent's note for $200 and for his compensation as her legal adviser. The parties were not dealing at arm's length. That the respondent trusted him implicitly is shown by the fact that she placed in his name practically all of the capital stock which she herself had paid for with what the evidence shows was all the property she owned. She had thus placed her property interests unreservedly in his hands. In such a case, the acts of the attorney and trustee must be viewed most narrowly and his conduct construed most strongly against him. The burden was upon him to show that his dealing

with the subject of the trust was free from all reasonable grounds for suspicion. She was entitled to full knowledge of his every act touching the trust, and to be taken into his fullest confidence and consulted as to any proposed disposition of the stock and the management of the corporate business which the stock represented. 4 Cyc. 957, 958, 960; *Felton v. Le Breton,* 92 Cal. 457, 28 Pac. 490; *Young v. Murphy,* 120 Wis. 49, 97 N. W. 496; *Rogers v. Marshall,* 14 Central Law Journal, 168; *Kisling v. Shaw,* 33 Cal. 425, 91 Am. Dec. 644; *Williams v. Reed,* 3 Mason (U. S.) 405; *Cunningham v. Jones,* 37 Kan. 477, 15 Pac. 572, 1 Am. St. 257; *Landis v. Wintermute,* 40 Wash. 673, 82 Pac. 100.

The evidence shows that, on about May 4th, the appellant turned over to his business associate, a Mr. Kelley, without the respondent's knowledge or consent, five shares of this stock without consideration, and for the obvious purpose of qualifying him to act as a trustee of the corporation. On May 31st, without notifying the respondent of his intentions or divulging the purpose of the meeting, he called a meeting of the stockholders for June 1st. The respondent advised him that she could not be present at that meeting and requested a postponement until the next day. She testified that she assumed that her request would be complied with. The meeting, however, was held on June 1st, and the respondent, by voting the stock which he held in trust, ousted her as trustee, vice president, secretary and manager of the corporation, and assumed possession of its books and accounts and absolute control of its assets. On June 4, he wrote to her as follows:

"Mrs. Maud I. Hetrick,
        "1809 18th Ave., Seattle.
    "Dear Madam,—You are hereby informed that any evidence of an attempt on your part, or the part of anyone acting for you or under your instructions, to collect or sequester the accounts and bills receivable of this company, of which you were formerly the manager, will be used as a basis for criminal prosecution by this company. As you are well

aware, no person has authority to collect or disburse the funds of the company, or endorse any paper payable to it, except its treasurer, and you will be advised and act accordingly.     Yours respectfully

"(Seal)           Maud I. Hetrick, Inc.

"C. W. Smith, President & Treasurer.

"L. J. Cruttenden, Secretary."

If further evidence were necessary to show that his intention was to treat the stock as his absolute property, and ignore the trust relation in which he held it, that evidence was found in the fact that on August 12, 1909, he organized the corporation of Ward & Jones, taking half of the capital stock in his own name, and transferred to it all of the assets of Maud I. Hetrick, Incorporated, by voting the stock of that corporation. The finding of the court as to the time of the conversion was fully justified by the evidence.

(2) It is contended that the court erred in finding that the stock converted was at the time of the conversion of a value of $1,400, and further erred in entering judgment for that amount. The conversion being established, the respondent was entitled to recover the value of the stock at the time of the conversion, regardless of what the property of the company may have been subsequently transferred for by the appellant. *Cushman v. Bonfield,* 139 Ill. 219, 28 N. E. 937; *Darling v. Potts,* 118 Mo. 506, 24 S. W. 461; *McDonald v. Danahy,* 196 Ill. 133, 63 N. E. 648. Where the stock has a regular market value, there is little difficulty in applying this rule. In this instance, however, the stock had no known market value. None of it was ever listed for sale or sold. In such a case value may be proven by showing the value of the property and business of the corporation at the date of the conversion less the liabilities at that time.

"Great difficulty has been experienced in determining what shall be the measure of damages for the conversion of stock. As the manner and conditions of the conversion vary, so also will the measure of damages vary from nominal damages to the highest value of the stock with dividends and interest,

and also any special damages which the plaintiff can establish. In general, the courts incline to the rule that the true measure of damages is the value of stock at the time of conversion, or a reasonable time after. By the phrase 'the value of the stock' is usually to be understood the market value. The fact that the shares of stock have no known market value will not prevent recovery, where the actual value is ascertainable, in an action to recover damages. The value may be proven by showing the value of the property and business of the corporation, less the amount of the liabilities." 2 Cook, Corporations (6th ed.), § 581.

See, also, *Collins v. Denny Clay Co.*, 41 Wash. 136, 82 Pac. 1012; *McDonald v. Danahy, supra.*

From rulings of the court during the progress of the trial, it is apparent that this rule was adopted, and from the amount found and a consideration of the evidence it would seem that the court found the value of $1,400 by taking what appeared to be approximately the book value of the stock arrived at as follows:

Assets.

| | |
|---|---:|
| Accounts receivable on May 31, 1909 | $1,220.32 |
| Cash on hand May 31, 1909 | 86.78 |
| Furniture and fixtures | 500.00 |
| Moneys withdrawn by plaintiff | 1,113.78 |
| Inventory estimated from original inventory, purchases and sales | 1,500.00 |
| | $4,420.88 |

Liabilities.

| | |
|---|---:|
| Notes payable to bank | $1,000.00 |
| Accounts payable | 163.00 |
| Capital stock at par | 1,000.00 |
| Due defendant Smith | 647.71 |
| Bank overdraft | 7.95 |
| | $2,818.66 |

| | |
|---|---:|
| Apparent surplus | $1,602.22 |

Deducting from this apparent surplus the money that had been withdrawn by the respondent, there would be left an actual surplus of $488.44, this added to the paid-up capital stock would make the stock worth on May 1, 1909, $1,-488.44. This would clearly be the actual value if the book value of the assets be taken as their actual worth. The rule, however, in its just operation contemplates a value of the assets to be determined as nearly as may be by the actual worth of the stock on hand. *Cabble v. Cabble,* 111 App. Div. 426, 97 N. Y. Supp. 773.

As to the accounts receivable the appellant, having converted the stock and notified the respondent not to attempt any collection of the accounts, should be charged with them at their face. There is, however, in evidence an actual inventory of the merchandise on hand made by the defendants Miss Ward and Miss Jones on June 8, 1909, both of whom testified to its correctness as showing the actual goods present and their actual value. It fixes the value at $1,062.21. This seems to be conceded by the appellant as the actual value of the merchandise on hand at that time. Since the respondent offered no evidence of actual value, we think the court should have taken this inventory as showing the goods and their value. It was made near the date of the conversion, and there was no evidence of any material change in the stock of goods between the date of the conversion and the date of this inventory.

There is another item which should also be revised. According to the evidence of the accountant and the showing on the ledger of the company, it appeared that the respondent had withdrawn money to the amount of $1,689.54 instead of $1,113.78. The preponderance of evidence sustains the larger amount. The statement of the assets should therefore be revised as follows:

| | |
|---|---|
| Accounts receivable | $1,220.32 |
| Cash | 86.78 |
| Fixtures | 500.00 |

Money withdrawn by respondent...............$1,689.54
Merchandise as per inventory................. 1,062.21

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Total assets ..........................$4,558.85
Liabilities ...............................$2,818.66

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Apparent surplus .... .................$1,740.19
Deducting money withdrawn by respondent.......$1,689.54

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Leaves a real surplus of................. $50.65

Adding this to the face value of the stock, we have the actual value at time of conversion, $1,050.65. From the vast mass of figures, statements and books submitted for our investigation in the statement of facts, this is as near as we have been able to arrive at any reasonable conclusion. We are satisfied that it is not far wrong. The judgment should have been for the last mentioned amount, and costs.

(3) It is objected that there was not a sufficient showing that the stock was the separate property of the respondent to enable her to maintain this action without joining her husband as plaintiff. She testified that the property was her separate property. Whatever claim the appellant had upon this stock was based upon his dealings with her alone. He took it from her and in trust for her. He is in no position to question her right to recover it or its value.

The cause is remanded with directions to modify the judgment in accordance with this opinion. Appellant may recover his costs on this appeal.

Dunbar, C. J., Crow, Chadwick, and Morris, JJ., concur.