42 Wn. App. 699 (1986)
713 P.2d 1110
BENTON M. BOUTILLIER, ET AL, Respondents,
v.
LIBBY, McNEILL & LIBBY, INC., ET AL, Appellants.
No. 6709-2-III.
The Court of Appeals of Washington, Division Three.
January 28, 1986.
Gary E. Lofland and Wilson & Lofland (Ira Michael Shepard and Paul M. Heylman, of counsel), for appellants.
Ted Roy and Roy & Pell, for respondents.
MUNSON, J.
Defendant, Libby, McNeill & Libby, Inc. Salaried Employees Retirement Plan, appeals the award of special retirement benefits to five of the plaintiffs, former salaried employees at Libby, McNeill & Libby's Yakima processing plant. Those plaintiffs, along with three other plaintiffs, cross-appeal the denial of severance benefits. We reverse on the issue of special retirement benefits and *701 affirm the denial of severance benefits.
For over a quarter of a century, Libby, McNeill & Libby (Libby), a nationwide food processing company, has maintained a defined benefit pension plan known as the Libby, McNeill & Libby, Inc. Salaried Employees Retirement Plan (Plan). The Plan is administered for the benefit of salaried employees by a 5-member pension board, made up of Libby corporate officers. Benefits are paid out of the Retirement Plan Trust Fund to which Libby has made contributions.
The Plan provides for several different types of benefits including regular retirement benefits, regular actuarially reduced early retirement, and special unreduced early retirement known as "70 formula". Only the 70-formula benefits are in issue here.
Section 4.03 of the Plan providing for 70-formula benefits, states that an employee is entitled to those benefits if: (1) he or she has completed 10 years of credited service, (2) his or her age and service equal at least 70, and (3) his or her company employment terminated prior to January 1, 1983, as a result of "elimination of his job or a complete or permanent closing of a department or unit prior to retirement ..." Section 1.03 provides: "`Company' shall mean Libby, McNeill & Libby, Inc. or any successor by merger, purchase or otherwise with respect to its employees".
All Libby employees were given an employee booklet entitled "Life at Libby's" which provides a summary of the Plan's terms, including the 70-formula benefits. This booklet defines "Company" to mean "Libby, McNeill & Libby, Inc., and its affiliate companies". In addition, it provides if there is a conflict between the material in its summary of the Plan and the actual Plan document, the Plan "will be the final authority". It is undisputed each of the plaintiffs received and read a copy of the booklet.
In addition to the Plan, Libby provided severance benefits, known as "separation pay" for employees terminated through no fault of their own. These benefits were administered according to a policy set out in the Libby's personnel *702 manual and administered by Libby's vice-president for personnel.[1] The separation pay plan was "unfunded" in that benefits were paid directly from Libby's general corporate assets rather than a trust fund. The terms of the separation pay policy were changed several times during the relevant period by the Libby vice-president for personnel. Written notification of such changes were sent to each plant personnel manager and the changes were inserted in each plant's copy of the personnel manual. Although these separation policy changes were not communicated directly to Libby employees, plaintiffs testified they were familiar with the personnel manual and knew it was available to them at the plant.
In the summer of 1981, Libby decided to divest its entire fruit and vegetable divisions. California Canners and Growers (Cal Can), a co-op of California growers, indicated interest in the fruit division. S.S. Pierce indicated interest in Libby's vegetable division. Libby, Touche-Ross (a national accounting firm) and several major banking institutions, upon reviewing Cal Can's financial status, concluded it was in good financial health despite a 1981 *703 operating deficit of $15 to $20 million. Testimony indicated such 1-year operating deficits were not indicative of a co-op's overall financial health. The 1981 profit and loss figures of all food processing companies were adversely affected by high interest rates and inventory costs.
On December 11, 1981, Libby signed letters of intent agreeing to sell the fruit division to Cal Can and the vegetable division to S.S. Pierce. Negotiations on specific terms of the sales ensued. In February 1982, a Libby interoffice memorandum marked "Strictly Confidential" announced that Libby planned to divest the fruit and vegetable operations and employees terminated as a result thereof were to be given enhanced severance pay without the 25-week limit previously incorporated into the policy. This "secret memorandum" was not communicated to plaintiffs nor were they aware of its existence prior to this suit.
During the negotiations, various employees made inquiries of Donald Scholtes, personnel manager at the Yakima plant. Mr. Scholtes testified that he talked to a Mr. Fyfe, vice-president of personnel for Libby, in March 1982, who had assured him that upon sale of the plant, each employee would be given the choice of taking either separation pay and 70-formula benefits if entitled or employment with Cal Can. Several of the plaintiffs testified Mel Carter, the Yakima plant manager, had given them the same information. However, on April 27, 1982, the employees were notified no such option would be available to them. They were told if Cal Can "offered" a comparable job, they would be ineligible for separation pay and 70-formula benefits whether they took the job or not.
In May 1982, Libby and Cal Can entered into an asset purchase agreement. Libby agreed to sell to Cal Can, as ongoing operations, the Yakima and Gridley, California, processing plants and to lease another Libby facility in Sunnyvale, California. Pursuant to section 7.5 of this agreement, Cal Can was obligated to notify Libby of (1) employees who were not going to be offered continued employment by Cal Can, or (2) employees who were going *704 to be offered lesser salaries or lesser responsibility. As a result, several salaried employees at the Yakima plant were "listed" by Cal Can. These employees were given both severance and 70-formula benefits in accordance with their age and service. Employees continuing with Cal Can at comparable salaries and responsibilities were not considered eligible for any benefits.
Plaintiffs were offered and accepted employment at Cal Can commencing June 17, 1982, at salaries equal to or better than Libby's, with comparable job responsibilities and benefits. After the Yakima plant was transferred to Cal Can, various "continued" employees who had taken comparable positions with Cal Can petitioned the Libby's pension board for their severance and 70-formula benefits. Libby denied these petitions on the grounds employees who were offered comparable positions by Cal Can or S.S. Pierce were ineligible for such benefits. As "continued personnel" none of the plaintiffs received severance or 70-formula benefits. Subsequently, they filed this suit for the benefits, although they continued their employment until June 30, 1983, when Cal Can declared bankruptcy and operations ceased at all its facilities, including Yakima.
Following trial, the court entered findings of fact, conclusions of law, and judgment on August 14, 1984, awarding 70-formula benefits to the plaintiffs; denying the plaintiffs' claim for severance benefits. Both Libby and the plaintiffs appeal.

LIBBY'S APPEAL
Initially, the Plan is within the definition of "pension plan" set out in section 1002(2) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. Under ERISA, decisions of the administrators of an employee pension trust shall be sustained unless arbitrary, capricious or contrary to law. Smith v. CMTAIAM Pension Trust, 654 F.2d 650, 654 (9th Cir.1981); Davis v. Line Constr. Benefit Fund, 589 F. Supp. 146, 148 (W.D. Mo. 1984); Hepler v. CBS, Inc., 39 Wn. App. 838, *705 844-45, 696 P.2d 596 (1985). The trial court acknowledged the arbitrary and capricious standard, but did not decide the issue on that basis. Instead, the Libby pension board's denial of 70-formula benefits was reversed on the grounds that the booklet violated 29 U.S.C. § 1022(b).[2]
Conclusion of law 21 states:
The Court does not reach the issue of whether there was arbitrary or capricious action by the Pension Board in determining that there was no permanent closing of a department or unit in the sale of the Yakima plant to Cal Can, but finds that Libby violated 29 U.S.C. § 1022 by failing to accurately and reasonably apprise participants of eligibility requirements for benefits or circumstances under which benefits would be denied under the "70-Formula."
Conclusion of law 22 provides:
Fiduciaries' reasonable interpretations of severance and pension plans must be upheld, however, this matter does not involve the adopting of one of two reasonable interpretations. It involves the failure to comply with ERISA requirements governing summary plan descriptions.[[3]]
*706 Libby asserts a trial court may not overturn a pension board's determination unless it is arbitrary and capricious; thus, the basis that the booklet violated ERISA's disclosure requirements is erroneous as a matter of law.
ERISA is a remedial statute designed to protect the interest of pension plan participants "by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans ..." 29 U.S.C. § 1001(b). It imposes a comprehensive scheme of fiduciary duties and responsibilities for administering plan funds. 29 U.S.C. § 1104. Under this comprehensive scheme, ERISA imposes stringent reporting requirements on benefit plan administrators. 29 U.S.C. § 1021 requires the plan administrator to provide each covered participant with a summary plan description. 29 U.S.C. § 1022 provides the summary plan must include specified information and be written in a manner that average plan participants can understand. In addition, the summary plan must be sufficiently accurate and comprehensive to inform participants and beneficiaries of their rights and obligations.[4] Congress' intent was to *707 prevent inequities stemming from an administrator's failure to apprise participants of essential requirements of their benefit plans. H.R. Rep. No. 93-533, 93d Cong., 2d Sess. 3, reprinted in 1974 U.S. Code Cong. & Ad. News 4639, 4646.
Moreover, the legislative intent of ERISA reveals the enforcement provisions were to be broadly applied. See H.R. Rep. No. 93-533, 93d Cong., 2d Sess. 3, reprinted in 1974 U.S. Code Cong. & Ad. News 4639, 4655. Accordingly, courts have recognized they have broad remedial powers to fashion equitable remedies for victims of pension plan administrators who have failed to satisfactorily discharge their fiduciary duties. See Morse v. Stanley, 732 F.2d 1139, 1147 (2d Cir.1984); Grossmuller v. International Union, United Auto. Aerospace & Agricultural Implement Workers Local 813, 715 F.2d 853, 857 (3d Cir.1983); Burud v. Acme Elec. Co., 591 F. Supp. 238, 249 (D. Alaska 1984); Corley v. Hecht Co., 530 F. Supp. 1155, 1163 (D.D.C. 1982). Thus, we find the trial court did not err as a matter of law in finding a violation of ERISA when the definition of "Company" differed between the Plan and the booklet.
[1] However, a mere procedural or technical violation of the ERISA disclosure provisions will not give rise to a substantive remedy where the failure to disclose does not cause the plaintiffs injury. Wolfe v. J.C. Penney Co., 710 F.2d 388 (7th Cir.1983); Burud, at 249; Hillis v. Waukesha Title Co., 576 F. Supp. 1103, 1109 (E.D. Wis. 1983). Here, the only discrepancy between the actual Plan document and the booklet was the definition of "Company". All of the other major requirements for receiving 70-formula benefits were accurately set forth in both documents. Thus, the *708 issue becomes whether the discrepancy between the definitions of "Company" was the cause of the plaintiffs' failure to receive 70-formula benefits.
[2] Libby did not deny the plaintiffs' "Company" employment was terminated as provided in the booklet. However, the board determined that because Cal Can immediately continued their employment, that termination was not because of job elimination or "complete or permanent closing of a department or unit". As a result, the distinction between definitions was irrelevant because the plaintiffs would not have qualified for 70-formula benefits under either one. Therefore, we conclude, because the "department or unit" continued with Cal Can, the plaintiffs are not entitled to the 70-formula benefits.[5]
Notwithstanding, the plaintiffs contend if the booklet definition of "Company" is not in conflict with the Plan document, the two should be read together. They argue that in light of the booklet's definition of "Company", readers of the Plan document would assume the "successor by merger, purchase or otherwise" language in the (actual) Plan did not include a company which merely purchased some of Libby's physical assets rather than a purchaser of the company itself. Thus, plaintiffs claim the pension board's denial of the 70-formula benefits was an unreasonable breach of fiduciary duties and therefore arbitrary and capricious. Hepler v. CBS, Inc., 39 Wn. App. 838, 845, 696 P.2d 596 (1985). We disagree.
As previously noted, review of a pension board's determination is narrow and will not be overturned unless arbitrary and capricious or contrary to law. Smith v. CMTAIAM Pension Trust, supra. The board's determination that *709 plaintiffs suffered neither job elimination nor department closing is supported by several recent decisions. Sly v. P.R. Mallory & Co., 712 F.2d 1209 (7th Cir.1983); Dhayer v. Weirton Steel Div. of Nat'l Steel Corp., 571 F. Supp. 316 (N.D.W. Va. 1983), aff'd sub nom. Sutton v. Weirton Steel Div. of Nat'l Steel Corp., 724 F.2d 406 (4th Cir.1983), cert. denied, 104 S.Ct. 2387 (1984). Therefore, we conclude the pension board's actions were not arbitrary and capricious.

EMPLOYEE'S CROSS APPEAL
Plaintiffs contend pension plans, whether bargained for or voluntarily funded, constitute deferred compensation and as such are contractual in nature. Bakenhus v. Seattle, 48 Wn.2d 695, 296 P.2d 536 (1956). By meeting the contractual requirements of the pension, they claim they are entitled to the benefits. Moreover, Donald Scholtes and Mel Carter, authorized officials of Libby, advised them that if they remained with Libby until the sale, they would be given the option of taking their benefits or staying with Cal Can. Based upon these statements, the plaintiffs declined employment with other employers because they were afraid of losing these benefits. Thus, they contend Libby is estopped from denying their benefits. They further assert the trial court erred in holding Washington contract law and the doctrine of estoppel is preempted by ERISA. In support of this proposition, they rely on Hepler v. CBS, Inc., supra.
In Hepler, this court considered whether a failure to disclose the method of calculating benefits constituted a breach of the plan administrator's fiduciary duties under ERISA. In holding the administrator had breached his fiduciary duty, we noted that "[i]n actions to enforce benefit rights under a welfare plan covered by ERISA, federal substantive law controls ..." Hepler, at 844. However, where state law is compatible with federal policy, state law principles may be applied. Plaintiffs contend that contractual rights and the doctrine of estoppel are "compatible" with ERISA. We disagree.
*710 [3] The 70-formula benefits clearly fall within ERISA. Severance pay, although not expressly set out in the language of 29 U.S.C. § 1002(1), also falls within the scope of ERISA as an "employee welfare benefit plan". 29 U.S.C. § 1002(1). Dhayer, at 330; Petrella v. NL Indus., Inc., 529 F. Supp. 1357, 1362 (D.N.J. 1982); Pinto v. Zenith Radio Corp., 480 F. Supp. 361, 363 (N.D. Ill. 1979), aff'd without opinion, 618 F.2d 110 (7th Cir.1980).
29 U.S.C. § 1144(a), the ERISA preemption provision, provides in pertinent part that with certain exceptions, ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ..." In Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 77 L.Ed.2d 490, 103 S.Ct. 2890 (1983), the Court eliminated much of the confusion arising from various federal and state decisions as to the scope of section 1144(a). In Shaw, at 98, the Supreme Court held that for the purposes of section 1144(a), the words "relates to" are to be interpreted in the broad sense. The Court went on to provide:
A law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.... We must give effect to this plain language unless there is good reason to believe Congress intended the language to have some more restrictive meaning.
(Citations omitted.) Shaw, at 96-97.
Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 525, 68 L.Ed.2d 402, 101 S.Ct. 1895, 1907 (1981) noted that state law which even indirectly impacts on ERISA may be superseded with respect to ERISA:
ERISA makes clear that even indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern. For the purposes of the preemption provision, ERISA defines the term "State" to include: "a State, any political subdivision thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter."
[4] Since the rendition of these opinions, the weight of *711 case authority has held state law claims which even indirectly impact pension plans are preempted by ERISA.[6] Here, application of Washington contract and estoppel law would indirectly regulate administrative decisions made with respect to the processing of pension plan claims. Moreover, application of Washington law also would provide alternative enforcement mechanisms not provided by ERISA. Therefore, we conclude plaintiffs state law claims "relate to" the Libby employee benefit plans and are preempted.
Next, they contend ERISA, as a "welfare benefit plan", requires the separation pay be administered according to the requirements of ERISA's disclosure provisions. See 29 U.S.C. §§ 1021-1030. Because there was no plan description or summary plan description as required by section 1022, Libby violated section 1104 which provides a plan must be "established" and as such breached its fiduciary duty. We disagree.
First, while Mr. Fyfe, the Libby vice-president for personnel who administered the severance benefits, testified he did not, in good faith, know that severance benefits were governed by ERISA, that admission is not relevant. More importantly, all of the eligibility requirements for receiving *712 severance pay were contained in the Libby personnel manual. While each individual Libby employee did not receive a copy of this manual or the termination provisions thereto, all testified they were knowledgeable and well informed with respect to the severance benefit policies set out in it. Again, while there may have been a technical violation of the ERISA requirements, plaintiffs were not injured. Equitable relief in the form of "severance benefits" appears inappropriate where there is merely a technical violation of the ERISA requirements, but otherwise there was substantial compliance with the requirement of the act. Accord, Pinto, at 363 (severance pay benefits denied despite the fact that the requirements were discretionary with the board); Morse, at 1147 (benefits denied despite fact the trustees did not spell out all requirements of policy).
[5] Next, plaintiffs argue the vice-president's denial of severance benefits was arbitrary and capricious considering the language of the various severance policies. In determining whether a denial of benefits under a given plan's language is arbitrary and capricious, the factors to be considered are: (1) a fair reading of the plan language and the reasonableness of the reading, and (2) uniformity of construction. Bayles v. Central States, Southeast & Southwest Areas Pension Fund, 602 F.2d 97 (5th Cir.1979).
Here, the terms of the January 1, 1981 policy stated severance benefits would not be paid "in situations involving the sale of a Company facility where employees at that facility continue to be employed in their present or comparable jobs by the purchaser of that facility". From a "fair reading" of the policy, there was a rational basis for the administrator to find these plaintiffs were not entitled to the benefits; they continued as employees with comparable jobs and benefits. In Sly v. P.R. Mallory & Co., supra, the question was whether employees terminated by the sale of a company division, but immediately hired by the successor company at the same job and pay rate, were entitled to severance benefits under the plan which allowed benefits for "position elimination". The court, in holding that the *713 plan administrator had not acted arbitrarily or capriciously in denying the benefits, stated:
To award severance benefits under these facts would result in a windfall to the employees who retained their positions with the purchaser of the going concern, which was clearly not the intention ... of ERISA.
Sly, at 1211.
Moreover, the denial clearly was consistent with Libby policy during the sales of Libby plants in Darion, Wisconsin, in 1979, and Leipsic, Ohio, in 1981. During those sales, continued employees were not given severance benefits. In addition, the policy was administered uniformly on this occasion in that none of the "continued" employees at the other plants sold to Cal Can or S.S. Pierce received severance benefits. The denial of benefits was not arbitrary and capricious.
It is also contended the trial court erred in finding "that neither the fiduciaries nor their employers benefited or stood to benefit financially" from the denial of the severance benefits.[7] They claim the vice-president was in a circumstance of "dual loyalty" since (1) a Libby officer administered the severance benefits and (2) the benefits were paid out of the Libby corporate accounts. Therefore, the vice-president breached his fiduciary duty to discharge his obligations "solely in the interest of the participants and beneficiaries". 29 U.S.C. § 1104(a)(1).
29 U.S.C. § 1108(c)(3) provides "[n]othing in ... this title shall be construed to prohibit any fiduciary from ... serving as a fiduciary in addition to being an officer, employee, agent, or other representative of a party in interest." Libby was required by ERISA to administer the *714 severance policy "solely in the interest of the participants and beneficiaries". 29 U.S.C. § 1104(a)(1). See Sutton, at 410; Donovan v. Bierwirth, 680 F.2d 263, 271 (2d Cir.1982).
The assertion that Libby did not act solely in the beneficiaries' best interest is contrary to the evidence presented at trial. The trial court found that in adopting the "enriched severance" policy of February 1982, Libby paid severance benefits of $2.6 million to employees not "continued" by either S.S. Pierce or Cal Can. Moreover, if severance benefits had been paid to every employee in the divisions sold under the 1981 severance policy, Libby would have only paid out $2.3 million. This conduct is inconsistent with the contention Libby denied the separation pay to save money. See Fentron Indus., Inc. v. National Shopmen Pension Fund, 674 F.2d 1300 (9th Cir.1982).
The plaintiffs urge, however, that Libby's conduct in failing to timely advise the employees they would not receive their benefits if merely "offered" positions with Cal Can was a breach of fiduciary duty. They assert the failure to apprise them until April 27, 1982, 3 days before Cal Can took over partial control of the plant, was an untimely failure to disclose the basis for receiving benefits. Such a failure, they contend, "must be perceived as arbitrary and capricious." We disagree. The trial court disbelieved the testimony about "offered" employment. Credible testimony was introduced that the employees were not advised sooner because Libby was not certain whether the sale would be consummated. The trial court did not err in finding no breach of fiduciary duty.
Next is the allegation that denial of their benefits was a breach of fiduciary duty since benefits had been given to "continued employees" when Libby sold its Grandview plant in 1976. Preferential effect alone, in the absence of a finding that the denial was arbitrary and capricious, will not constitute a violation of section 1104(a). Petrella, at 1367. Here, testimony established the reason for providing benefits during the Grandview sale was based on the fact the buyer, who was in a precarious financial condition, *715 leased the plant to another company to operate. Thus, employment was continued by a lessee not a purchaser. The trial court found Libby reasonably believed Cal Can was in good financial condition at the time of the sale. Testimony supports this finding; the trial court did not err in distinguishing the Cal Can sale from the Grandview sale. Therefore, Libby did not breach its fiduciary duty.
Finally, plaintiffs argue the pension board and the trial court erred in finding they were "continued" by Cal Can at "comparable salaries and benefits." The uncontested testimony demonstrated all these plaintiffs received salaries equal to or better than their Libby salaries. Moreover, the fringe benefit packages were comparable. Thus, the finding was not arbitrary and capricious.
The judgment is reversed with respect to the 70-formula benefits; it is affirmed with respect to the severance pay benefits. In light of our decision, plaintiffs are not a "substantially prevailing party" and their request for attorney fees is denied.
McINTURFF, A.C.J., and THOMPSON, J., concur.
Review denied by Supreme Court June 5, 1986.
NOTES
[1] In September, 1975, the separation pay provision of the personnel manual provided "regular employees ... permanently dropped from service" would qualify for termination benefits if they were not expected to be reemployed and the reasons for termination were clearly outside their own control. The personnel manual further provided that employees were not eligible if they rejected offers of continuing employment in a comparable position if relocation was not required and there was no reduction in salary.

On January 1, 1980, the separation pay policy was amended omitting any reference to a denial of benefits if the employee "rejected offers of continuing employment in a comparable position". Instead, the 1980 policy provided severance benefits in three situations involving involuntary termination. These were: (1) closing of a plant, office, warehouse, etc.; (2) elimination of an employee's position; and (3) substandard work. Under the 1980 policy, such an employee was to be paid 1 week's pay for each full year of service (with Libby) but not less than 2 weeks' pay nor more than 25 weeks.
The separation pay policy was again amended on January 1, 1981, to add the following phrase: "Consistent with past company policy, separation allowance benefits are not payable in situations involving the sale of a company facility where employees at that facility continue to be employed in their present or comparable jobs by the purchaser of that facility."
[2] Plaintiffs contend that while Libby assigned error to conclusions of law 21 and 22, it failed to assign error to conclusion of law 23 which states plaintiffs are entitled to the "70-formula" benefits. Plaintiffs argue that by failing to assign error, this court is precluded under RAP 12.1 from considering the issue.

RAP 12.1(a) provides: "Generally. Except as provided in section (b), the appellate court will decide a case only on the basis of issues set forth by the parties in their briefs."
In determining whether an issue has been "set forth", RAP 10.3 is illustrative. RAP 10.3(g) provides:
Special Provision for Assignments of Error. ... The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto.
(Italics ours.)
While defendant did not assign error to conclusion of law 23, such a conclusion naturally follows from and is "clearly disclosed" in the associated issues raised by conclusions 21 and 22. See also Survey of Washington Law, Has the Court Returned to Archaic Appellate Procedural Practices?, 19 Gonz. L. Rev. 167, 169 (1983).
[3] The court, in its memorandum opinion, explained its reasoning more fully:

"The Court concludes that irrespective of questions concerning arbitrary and capricious action related to investigation or lack of investigation of financial stability of Cal. Can, the Board violated Section 1022 by failing to accurately and reasonably apprise participants of eligibility requirements for benefits or circumstances under which benefits would be denied under the 70-formula. Although a statement on the Summary states conflicts between the Plan and the Description are governed by the Plan, that provision is self-serving which, under these circumstances defeats the purpose of Section 1022. The introductory language in the Summary recognizes the Pension Plan is complex and its purpose is to use `non-technical language to help (participants) more easily understand the Plan'. The conflicting definitions [of `Company'] need not have occurred. All the Board needed to do was provide one definition in simple language. It is immaterial whether the error was an oversight or unintentional. The Board is required to accurately apprise employees of such information. It is absolutely clear company means Libby in the Summary Plan Description, and gives no notice to readers company means otherwise. If they were required every time they read a clearly stated, unambiguous section of the Summary Plan Description to read the `complex' Plan for the real meaning, there would be no need for Summary Plan Descriptions and Section 1022 would be rendered useless." (Italics ours.)
[4] 29 U.S.C. § 1022 provides in relevant part:

"(a)(1) A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b) of this title. The summary plan description shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with section 1024(b)(1) of this title."
[5] There is no indication that Congress intended to allow compensatory damages or the award of the actual benefits for failure to disclose. Under such circumstances, it appears that an employee would be entitled to "other appropriate equitable relief" including injunctive relief. 29 U.S.C. § 1132(a)(3); see also Petrella v. NL Indus., Inc., 529 F. Supp. 1357, 1370 (D.N.J. 1982). This appears especially true where failure to disclose results in a mere technical violation of ERISA. See Hillis, at 1109.
[6] See, e.g., Russell v. Massachusetts Mut. Life Ins. Co., 722 F.2d 482, 487 (9th Cir.1983) (state law claims based on improper handling of pension plan claims preempted by ERISA); Miner v. International Typographical Union Negotiated Pension Plan, 601 F. Supp. 1390, 1393 (D. Colo. 1985) (common law claims for intentional infliction of emotional distress, breach of implied contractual terms, tortious interference with employment relationships and wrongful discharge preempted); Lucash v. Strick Corp., 602 F. Supp. 430, 435 (E.D. Pa. 1984) (state law claims of intentional breach of contractual obligations preempted); Davis v. Line Constr. Benefit Fund, 589 F. Supp. 146, 149 (W.D. Mo. 1984) (common law rule regarding nonassignability of personal injury claims preempted by ERISA); Tolson v. Retirement Comm. of Briggs & Stratton Retirement Plan, 566 F. Supp. 1503, 1504 (E.D. Wis. 1983) (common law protection of contract rights preempted); Sasso v. Vachris, 106 A.D.2d 132, 482 N.Y.S.2d 875, 879 (1984) (section 630 of New York Business Corporation Law which provides alternative state law remedy for ERISA violation preempted); Provience v. Valley Clerks Trust Fund, 163 Cal. App.3d 249, 209 Cal. Rptr. 276, 280 (1984) (California tort law so far as applied to ERISA "relates to" and therefore is preempted by section 1144(a)).
[7] Plaintiffs contend Libby's vice-president as a "dual loyalty" administrator has the burden of disproving a breach of fiduciary duty to the beneficiaries. In support, cross appellants cite Hetrick v. Smith, 67 Wash. 664, 122 P. 363 (1912). ERISA, however, places the burden of showing arbitrary and capricious conduct of a pension board on the beneficiaries who are challenging the determination. In light of the preemption analysis above, we believe the rule set out in Hetrick is preempted by ERISA to the extent it applies to pension plans.