**Antoinette Storchak JASKILKA**

v.

**CARPENTER TECHNOLOGY CORP.**

**Civ. No. B–90–288(JAC).**

United States District Court,
D. Connecticut.

Feb. 22, 1991.

JoNel Newman, Garrison, Silbert & Arterton, New Haven, Conn., for plaintiff.

Michael N. LaVelle, Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., for defendant.

## RULING ON DEFENDANT'S MOTION TO DISMISS

JOSÉ A. CABRANES, District Judge:

Plaintiff has alleged in her two-count complaint that defendant discharged her with the purpose of interfering with the attainment of a right to which she was entitled in violation of section 510 of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461, 1140 (1988) ("ERISA") (Count One), and that defendant breached a contract by refusing to transfer the plaintiff to another position within the company when her former position was eliminated (Count Two).

Defendant has moved to dismiss both counts of the complaint. Defendant asserts that Count One is barred by the relevant statute of limitations and that Count Two should be dismissed either for lack of a federal claim or because the question of whether company practices and oral assurances are sufficient to give the plaintiff a contractual right to be transferred to a different position is unsettled in Connecticut and should not be resolved by a federal court.

## I. BACKGROUND

The following facts have been taken from plaintiff's complaint, and they will be presumed true solely for the purposes of considering defendant's motion to dismiss. Plaintiff was hired as a nurse in April 1967 in defendant's Bridgeport, Connecticut facility. By July 1987, she had worked there for over 20 years and had held positions of responsibility such as Chief Nurse and Night Nurse in defendant's medical department. In addition, during a labor strike in 1986, she filled the position of dispatcher for approximately five months.

In July 1987, defendant closed its medical department. Hoping to displace the current dispatcher based on plaintiff's seniority and her prior experience in that job, plaintiff applied for the dispatcher position. On July 31, 1987, instead of offering plaintiff the dispatcher job, defendant terminated her.

Defendant maintains a retirement plan that provides for an unreduced regular pension benefit together with medical and life insurance benefits for any employee for whom the total of age and continuous service equals at least 65 and less than 80 years and who has not been offered suitable long-term employment with the company ("Rule–of–65 Plan"). According to plaintiff, she would have become eligible for this plan had she remained an employee until June 1988—approximately eleven months more.

Furthermore, defendant maintained a policy and practice of allowing certain of its personnel affected by a closing to displace others "based on seniority, and provided the person has the adequate job skills and abilities necessary to perform the job without training." See Complaint (filed June 20, 1990), para. 16. Plaintiff had performed the job of dispatcher during the 1986 strike, and she possessed the requisite seniority, skills, and ability to displace the dispatcher in accordance with defendant's oral and written seniority policy.

## II. DISCUSSION

### A. *Statute of Limitations*

■ Defendant argues that plaintiff's claim under ERISA must be dismissed because it is untimely. Since Congress did not provide for a statute of limitations corresponding to the provision of ERISA at issue in this case, both parties agree that this court should apply the rule of *Board of Regents v. Tomanio,* 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980), and borrow "the [Connecticut] state law of limitations governing an analogous cause of action." *See also Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985) ("When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not incon-

sistent with federal law or policy to do so.").

Defendant argues that the analogous cause of action under Connecticut law for a claim of wrongful discharge under ERISA is the state law governing the recovery of wages. Because plaintiff has made a claim for back wages, defendant argues that the relevant statute of limitations is that governing unpaid wage claims. According to that statute, "[n]o action for the payment of remuneration for employment payable periodically shall be brought but within two years after the right of action accrues,...." Conn.Gen.Stat.Ann. § 52–592 (West Supp.1990). Plaintiff filed the complaint in this case on June 20, 1990, which is almost three years after she was terminated by the defendant.

Defendant relies on *Clark v. Coats & Clark, Inc.*, 865 F.2d 1237 (11th Cir.1989), in which the court held that claims pursuant to section 510 of ERISA are analogous to claims for the recovery of wages. The court resisted the argument that the employees' claims resembled personal injury actions, reasoning instead that "[t]he focus of the ERISA statute at issue in this case does not encompass individual or personal rights. The primary purpose of ERISA is to provide adequate retirement income to persons who have spent their careers in a productive work capacity." *Id.* at 1242.

Plaintiff contends, however, that other jurisdictions have disagreed with the reasoning of the Court of Appeals for the Eleventh Circuit. For example, in *Gavalik v. Continental Can Co.*, 812 F.2d 834 (3d Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987), the court upheld the district court's determination that claims under section 510 of ERISA were more analogous to employment discrimination or breach of fiduciary duty claims than to contract claims. There does not appear to be any case in this Circuit that has held specifically that a claim under section 510 of ERISA is "more analogous" to employment discrimination than to a claim for unpaid wages.

Under Connecticut law, there exists a common law cause of action in tort for discharges "where the discharge contravenes a clear mandate of public policy." *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 474, 427 A.2d 385, 386 (1980); *see also Magnan v. Anaconda Indus., Inc.*, 193 Conn. 558, 565, 479 A.2d 781, 785 (1984). What constitutes a "clear mandate of public policy" is not always clear, but the Connecticut Supreme Court has concluded that "[c]ertainly when there is a relevant state statute we should not ignore the statement of public policy that it represents." *Sheets*, 179 Conn. at 480, 427 A.2d at 389. A *federal* statute that prohibits the discharge of an employee "for the purpose of interfering with the attainment of any right" to which that employee is entitled under ERISA articulates a "clear mandate of public policy." A complaint alleging discharge for the purpose of depriving an employee of retirement benefits under ERISA bears a close resemblance to a cause of action for wrongful discharge in violation of a clear mandate of public policy under Connecticut law.

Under Connecticut law, "[t]he three-year Statute of Limitations, § 52–577, is applicable to all tort actions other than those actions carved out of § 52–577 and enumerated in § 52–584 [personal injury] or another section [e.g., § 52–577a (product liability), § 52–577c (hazardous substances), § 52–577d (child abuse), etc.]." *United Aircraft Corp. v. International Ass'n of Machinists*, 161 Conn. 79, 107, 285 A.2d 330, 345 (1971). Because there is no explicit statutory exception for a limitation on claims for wrongful discharge, the relevant statute of limitations for wrongful discharge is the general statute for actions founded upon a tort. Conn.Gen.Stat.Ann. § 52–577 (West 1960). Borrowing from this statute of limitations for wrongful discharge as the most clearly analogous action under state law to an action under section 510 of ERISA, I find that plaintiff had three years from the time of her discharge to bring suit. According to the undisputed facts of this case, she complied with the three-year statute of limitations, and her claim for relief was timely filed.

### B. *Preemption*

 Defendant argues that Count Two of plaintiff's complaint—the breach of contract claim—should be dismissed because "[i]f the allegations are that a common law claim of breach of contract has deprived the plaintiff of the benefits of an employee benefit plan, the claim is preempted by ERISA." Memorandum of Law in Support of Defendant's Motion to Dismiss (filed Sept. 4, 1990) at 8.

Section 514(a) of ERISA provides that "the provisions of this [Act] ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a) (1988). The Supreme Court has recognized that the key to interpreting this preemption language is found in the words "relate to." *See Ingersoll–Rand Co. v. McClendon*, — U.S. —, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990); *FMC Corp. v. Holliday*, — U.S. —, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990); *see also General Elec. Co. v. New York State Dep't of Labor*, 891 F.2d 25, 29 (2d Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990) (state law "relate[s] to" employee benefit plans when "it has connection with or reference to such plans [and] whenever it purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans" (citations and quotation marks omitted)). In *Ingersoll–Rand*, the Court recently held that a state cause of action for wrongful discharge was preempted by ERISA because "the existence of a pension plan [was] a critical factor in establishing liability under the State's wrongful discharge law. As a result, this cause of action related not merely to pension plans, but to the essence of the pension *plan* itself." *Ingersoll–Rand*, 111 S.Ct. at 483 (emphasis in original).

In Count Two of her complaint, plaintiff alleges that defendant breached its contract "[i]n refusing to award plaintiff the Dispatcher position ... causing her to suffer lost wages, lost insurance, lost retirement benefits including Rule of 65 retirement benefits and other fringe benefits, and consequential damages." Complaint, para. 24. In contrast to the wrongful discharge claim at issue in *Ingersoll–Rand*, plaintiff's cause of action for breach of contract does not depend on the existence of the retirement plan. *Id..* para. 16 (alleging that defendant "promulgated and maintained oral and written policy and practice of allowing its Salaried Non–Exempt personnel affected by the closing 'displacement rights based on seniority' "). Although ERISA was intended to have a "sweeping preemptive effect in the employee benefit plan field," *American Progressive Life & Health Ins. Co. v. Corcoran*, 715 F.2d 784, 786 (2d Cir.1983), it was not intended to reach state laws that may only indirectly affect the benefit plans. "Quite clearly, there must be a point beyond which ERISA was not designed to reach." *Totton v. New York Life Ins. Co.*, 685 F.Supp. 27, 30 (D.Conn.1987) (plaintiff's claim for lost benefits resulting from employer's breach of employment contract is not preempted because recovery would not affect administration, financial status, or obligations of plan). In this case, the plan is irrelevant to the cause of action itself. It is not even suggested that this cause of action directly relates to a benefits plan, much less to "the essence of the pension *plan* itself." *Ingersoll–Rand*, 111 S.Ct. at 483 (emphasis in original). The existence of a retirement plan is relevant only to the issue of damages to which plaintiff might be entitled should she prevail on her breach of contract claim. Under these circumstances, the cause of action specified in Count Two of the complaint is not preempted by ERISA.

### III. CONCLUSION

For the reasons stated above, defendant's Motion to Dismiss is DENIED.

It is so ordered.