[No. 12271-9-III.  Division Three.  October 21, 1993.]

ALVIN B. CUTLER, ET AL, *Respondents,* v. PHILLIPS PETROLEUM COMPANY, *Petitioner.*

*Richard D. McWilliams, Simon R. Collins,* and *Paine, Hamblen, Coffin, Brooke & Miller,* for petitioner.

*Patrick M. Risken* and *Evans, Craven & Lackie, P.S.; Richard C. Eymann* and *Feltman, Gebhart, Eymann & Jones P.S.,* for respondents.

SWEENEY, A.C.J. — Twelve former employees of Phillips Petroleum Company brought suit against Phillips, alleging one Employee Retirement Income Security Act of 1974 (ERISA) cause of action, six state law causes of action, and a claim of age discrimination. The court dismissed two causes of action preempted by ERISA, but denied Phillips' motion to dismiss the age discrimination claim and the remaining five state law causes of action. Phillips appeals the court's decision denying its motion to dismiss the state law causes of action. We affirm.

## FACTUAL BACKGROUND

Prior to December 1985, respondents were employees of Phillips Petroleum Company. In December 1985, all worked for a subsidiary of Phillips in either Spokane or Finley. The Spokane employees had worked for Phillips for an average of 26 years (range 19 to 31 years).

In December 1985, Phillips was faced with a threatened hostile takeover. It decided to liquidate debt by selling assets, including the plants in Spokane and Finley, to Cepex American.

The employees' complaint alleges that Phillips' management told the employees that Phillips had protected their salary and benefits by contract with Cepex. They were assured that any accrued Phillips salary and benefits would not be reduced for a minimum of 2 years following the sale. They were also assured the sale would be made to a company with

the financial ability and commitment to run the plants for a substantial period of time.

Phillips sold the assets to Cepex on March 1, 1986. One employee requested a transfer within Phillips; the request was denied. The other employees acquiesced in their transfer to Cepex. It soon became apparent that Cepex would not continue operation of the plants.

On April 3, 1986, Phillips announced a "Special Separation Program" (SSP). The program included enhanced retirement benefits, severance pay, outplacement and housing assistance, and medical and life insurance benefits. Eligibility, however, was limited to those who terminated their employment between April 3 and July 1, 1986. The employees were denied participation in the SSP because they were not Phillips employees on April 3, 1986. Higher ranking Phillips employees apparently knew of the SSP prior to March 1, 1986; they continued to work at Phillips and were therefore eligible for the program.

On or about December 26, 1986, the employees were laid off or otherwise separated from Cepex.

## PROCEDURAL HISTORY

Six employees brought suit in Spokane County Superior Court on February 28, 1989. Six Finley employees filed a separate action against Phillips in Benton County. The Benton County cause was transferred to Spokane County and consolidated with this action.

The causes of action in the first amended complaint included: (1) benefits unlawfully withheld based upon RCW 49.46.010; RCW 49.52.050; RCW 49.52.070 (an employer who pays lower wages than it is obligated to pay an employee or receives rebates from the employee's wages is guilty of a misdemeanor and the employee may recover two times the lost wages plus costs and attorney fees); (2) breach of fiduciary duty as to the six Spokane employees claiming that Phillips unlawfully interfered with their rights as participants in the SSP based upon ERISA, 29 U.S.C. § 1101 *et seq.*; (3) negligence; (4) breach of contract; (5) fraud; (6) negligent mis-

representation; (7) outrage; and (8) age discrimination, as to the six Spokane employees, based upon RCW 49.60 and 29 U.S.C. § 621 *et seq.* The employees' alleged damages included frustration of future additional retirement benefits, loss of earnings and earning capacity, and mental anguish and emotional distress.

Phillips moved to dismiss pursuant to CR 12(b)(1) or, in the alternative, for summary judgment on all causes of action. The court dismissed the first two causes of action — for benefits unlawfully withheld and breach of fiduciary duty — concluding that they were preempted by ERISA. The court denied Phillips' motion as to age discrimination; Phillips does not appeal this ruling. The court also denied the motion to dismiss the employees' state law causes of action for breach of contract and tort relying on *Klank v. Sears, Roebuck & Co.*, 735 F. Supp. 260 (N.D. Ill. 1990). The court reasoned that the essence of the employees' complaint was not benefits under the SSP, despite the fact that their causes of action for breach of contract or tort might result in an award of damages, one measure of which would be the SSP.

Phillips appeals the court's denial of the motion to dismiss the state law causes of action.

### STANDARD OF REVIEW

A trial court's ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, CR 12(b)(6), presents a question of law which we review de novo. *Hoffer v. State*, 110 Wn.2d 415, 420, 755 P.2d 781 (1988), *aff'd on rehearing*, 113 Wn.2d 148, 776 P.2d 963 (1989).

### ISSUE/CONTENTIONS

The dispositive issue, as framed by the employees' amended complaint and Phillips' answer, is whether the employees' claims "relate to" a benefit plan and are, therefore, preempted by ERISA. 29 U.S.C. § 1144(a).[1] The answer depends on the

---

[1] 29 U.S.C. § 1144(a) provides:

"Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter *shall supersede any and all State laws*

characterization of the allegations in the employees' complaint.

The employees claim that they are not seeking ERISA benefits wrongfully denied, but rather seek all damages which proximately flow from alleged misrepresentations regarding the security of their employment with Cepex. Those damages may, in part, be measured by benefits lost as a result of Phillips' conduct. The essence of their complaint is not that Phillips interfered with the attainment of benefits, but rather that Phillips, through various artifices, induced them to transfer to Cepex and, as a result, they incidentally lost benefits. Paragraph 9 of the amended complaint is illustrative:

> Defendant Phillips represented to the plaintiffs that Phillips had protected each of them by contracting or otherwise agreeing with Cepex concerning salary and benefits, and assured the plaintiffs that *any Phillips salary and benefits accrued by the plaintiffs with Phillips would be intact without reduction for a minimum of two years* after the date of sale to Cepex without reduction or elimination.

(Italics ours.)

Phillips' position on the other hand is that any claim for recovery based on an employee benefit necessarily implicates ERISA and is therefore preempted. Phillips contends that the employees have not only the right but the obligation to sue under ERISA "to recover benefits due . . . under the terms of [the] plan, to enforce . . . rights under the terms of the plan, or to clarify . . . rights to future benefits under the terms of the plan". 29 U.S.C. § 1132(a)(1)(B). Phillips characterizes the employees' complaint as one of interference with attainment of benefits.

Both parties cite more than 60 federal cases in support of their respective positions. Unfortunately, there is ample, well-reasoned authority which would support either position. We limit our discussion of relevant case law to recent pronouncements by the United States Supreme Court and

---

*insofar as they may now or hereafter relate to any employee benefit plan* described in section 1003(a) of this title and not exempt under section 1003(b) of this title." (Italics ours.)

the Ninth Circuit of the United States Court of Appeals on the issue and the single case from this court discussing the issue.

Because the gravamen of the employees' complaint does not and cannot relate to an employee benefit plan, we conclude that preemption is not required.

### RELATION OF COMPLAINT TO EMPLOYEE BENEFIT PLAN

Whether state law "relates to" employee benefit plans is at the heart of the ERISA preemption inquiry, and its resolution is the key to resolving the fundamental federalism questions that ERISA poses.

If ERISA preempted all state law relating to employee benefit plans, a dangerous vacuum would result. Progressive state legislation would be frustrated, and Congress might not fill the void with the necessary federal legislation. Major problem areas in employment law could be left unaddressed. . . . State law is ancillary and subordinate to the federal law but does play an important interstitial role.

Gregory, *The Scope of ERISA Preemption of State Law: A Study in Effective Federalism*, 48 U. Pitt. L. Rev. 427, 457-58 (1986-1987).

■ The Supreme Court construes the "relation to" language of the ERISA preemption broadly. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138-39, 112 L. Ed. 2d 474, 111 S. Ct. 478, 482 (1990); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-47, 95 L. Ed. 2d 39, 107 S. Ct. 1549, 1552-53 (1987); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732-33, 85 L. Ed. 2d 728, 105 S. Ct. 2380, 2385 (1985); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 99-100, 77 L. Ed. 2d 490, 103 S. Ct. 2890, 2901 (1983). A law relates to a plan "if it has a connection with or reference to such a plan." *Shaw*, at 97. But if the effect on the plan is "too tenuous, remote, or peripheral", the action does not relate to the plan and preemption is not required. *Shaw*, at 100 n.21.

Phillips' preemption argument rests primarily on three cases: *Ingersoll-Rand Co. v. McClendon, supra; Olson v. General Dynamics Corp.*, 960 F.2d 1418 (9th Cir. 1991), *cert.*

*denied*, ___ U.S. ___, 119 L. Ed. 2d 588, 112 S. Ct. 2968 (1992); *Boutillier v. Libby, McNeill & Libby, Inc.*, 42 Wn. App. 699, 713 P.2d 1110, *review denied*, 106 Wn.2d 1005 (1986). We believe all are distinguishable although each is instructive.[2]

In *Ingersoll-Rand*, an employee asserted that his termination had resulted from his employer's attempt to avoid contributing to his pension fund — a cause of action expressly provided for by ERISA. 29 U.S.C. § 1140.[3] There, the court observed that the employee's wrongful discharge action required a finding that an ERISA plan existed and that the employer's motive was pension defeating. "[T]he existence of a pension plan [was] a critical factor in establishing liability under the State's wrongful discharge law. . . . [T]here simply [was] no cause of action if there [was] no plan." (Italics omitted.) *Ingersoll-Rand*, at 139-40.

Here, a benefit plan is not essential to the action. In fact, other than potentially providing a measure for a portion of the damages to which these employees may be entitled, any benefit plan is irrelevant. The state law causes of action — negligence, breach of contract, fraud, negligent misrepresentation and outrage — would exist without any benefit plan,

---

[2]Other United States Court of Appeals, Ninth Circuit, cases cited by Phillips in support of its preemption argument are also distinguishable: *Felton v. Unisource Corp.*, 940 F.2d 503, 508 (9th Cir. 1991) (employee's claim that he was discharged to avoid payment of medical benefits expressly preempted by ERISA, 29 U.S.C. § 1140); *Lea v. Republic Airlines, Inc.*, 903 F.2d 624, 631, 633 (9th Cir. 1990) and *Nevill v. Shell Oil Co.*, 835 F.2d 209, 212 (9th Cir. 1987) (when employees had claims actionable under ERISA, state law causes of action were preempted); *Kanne v. Connecticut Gen. Life Ins. Co.*, 867 F.2d 489, 493-94 (9th Cir. 1988) (suits for improper processing of employee's claims to welfare plan benefits are preempted by ERISA), *cert. denied*, 492 U.S. 906 (1989); *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1356 (9th Cir. 1984) (suit by former employees for benefits under employee welfare plan preempted), *cert. denied*, 474 U.S. 865 (1985).

[3]29 U.S.C. § 1140 provides in relevant part:

"It shall be unlawful for any person to discharge . . . a participant . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . .".

including the SSP. *Jaskilka v. Carpenter Technology Corp.*, 757 F. Supp. 175, 178 (D. Conn. 1991).

Following *Ingersoll-Rand*, the Ninth Circuit of the United States Court of Appeals decided *Olson v. General Dynamics Corp.*, *supra*. There, an employee sued three former employers in state court for fraud, claiming they had misrepresented his retirement benefits. The product line on which he worked was sold by General Dynamics to Amex Systems, Inc., and thereafter to Science Applications International Corporation. Olson received commitments from the president of Amex that his benefits would be equal to or better than those afforded by his original employer, General Dynamics. After retirement, he received benefits which were considerably less than those he would have received under the General Dynamics plan. The defendants removed the case to federal district court where they moved for summary judgment. The District Court granted the motion, and the Ninth Circuit affirmed. The court held that the fraud claim related to the benefit plans and was therefore preempted. *Olson*, at 1423.

*Olson* is factually distinguishable from this case. Olson's suit was for benefits denied under a retirement plan by one or more previous employers. The benefit plan was not the incidental measure of his damages; it was the basis for his claim. As in *Ingersoll-Rand*, without the benefit plan there was no basis for a suit. The *Olson* court makes the same point in distinguishing its decision in *Martori Bros. Distribs. v. James-Massengale*, 781 F.2d 1349 (9th Cir.), *amended*, 791 F.2d 799, *cert. denied*, 479 U.S. 949, 1018 (1986):

> In *Martori*, the benefit plan in question was used only to measure the benefits that were awarded to union employees whose employers were found to have engaged in unfair labor practices. Because of those unfair practices, the plaintiffs did not receive the benefits that "might have been included had a contract been reached," *Martori*, 781 F.2d at 1353, and California law required the Court to look to the hypothetical "benefit package they would have received" to calculate the one-time, make-whole remedy.

*Olson*, at 1422.

Our state courts have addressed the meaning of the term "relates to" only once, in *Boutillier v. Libby, McNeill & Libby, Inc., supra.* The case is factually similar in that former employees sued Libby following the sale of one of its divisions and the transfer of that division's employees to California Canners and Growers. In *Boutillier*, as here, plans for enhanced separation benefits were not disclosed to transferring employees prior to their separation from Libby. The employees sued in state court alleging state law causes of action for breach of contract and estoppel and claiming a right to severance and other retirement benefits. Libby countered, citing language in the benefit plan which provided that those employees who continued with the purchasing company at comparable benefits and salaries were not entitled to severance benefits. *Boutillier*, at 704. We properly concluded that the claims relate to an "employee welfare benefit plan", 29 U.S.C. § 1002(1), and therefore those "continued" employees' state law causes of action for estoppel and breach of contract were preempted by ERISA. *Boutillier*, at 711.

Despite the factual similarities the claims advanced in *Boutillier* are distinguishable. There, the employees made claims and stated causes of action for benefits they asserted were wrongfully denied under the separation pay plan — an employee benefit plan covered by ERISA. At issue was the benefit plan and its meaning. *Boutillier*, at 704. The employees asserted a right to severance pay claiming they were terminated within the meaning of the plan, not a claim for damages measured by benefits, as is the case here.

■ Moreover, the employees in *Boutillier* claimed that a conflict between the wording of the benefit plan document and a booklet explaining the document violated the provisions of ERISA. *Boutillier*, at 708. Again, a claim under ERISA. The basis for the suit here is not an employee benefit plan; rather, it is representations made by Phillips regarding Cepex which induced these employees to transfer to their detriment.

Recently, the Ninth Circuit of the United States Court of Appeals noted in *Tingey v. Pixley-Richards West, Inc.*, 953 F.2d 1124 (9th Cir. 1992) that:

> ERISA preempts state law causes of action that offer remedies for the violation of rights expressly guaranteed by ERISA and exclusively enforced by ERISA's civil enforcement mechanism . . . [A]n otherwise ERISA-preempted claim may survive to the extent that it relies on a theory independent of the benefit plan.

(Citations omitted.) *Tingey*, at 1130-31. As long as the "underlying theory of the case revolves around the denial of benefits", state law causes of action are preempted. *Tingey*, at 1131 n.2. In that case, 10 state law causes of action were preempted because the underlying theory of all the causes of action was that the employee was fired to avoid the payment of benefits. *Tingey*, at 1131.

Here, the employees' underlying theories revolve around Phillips' alleged misrepresentations regarding Cepex, not the denial of vested benefits. Simply put, the allegations are that Phillips made representations to these employees that induced them to transfer to Cepex. Those representations are alleged to be false, misleading, negligent and outrageous, and consequently may support causes of action under state law. If they are successful, the employees are entitled to recover damages which may be measured in part by benefits lost. The mere fact that they may be entitled to damages based on the loss of certain benefits in addition to salary and general damages should not result in their state law causes of action being preempted by ERISA.

Phillips' position would require preemption of a cause of action arising in an employment relationship when benefits are one measure for an element of damage. "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21, 77 L. Ed. 2d 490, 103 S. Ct. 2890, 2901 (1983). This suit is not based on an employee benefit

plan. No benefit plan is regulated, directly or indirectly, by these state law causes of action. The employees' state law causes of action do not "relate to" an employee benefit plan and therefore are not preempted by ERISA.

## PARTICIPANTS

██ ██ Moreover, if this court were to find the employees' state law causes of action preempted by ERISA, the employees would be placed in the unfair position of having no forum in which to raise their complaint regarding Phillips' conduct because they do not fall within the ERISA definition of "participant". Civil ERISA actions may be brought by a participant. 29 U.S.C. § 1132(a)(2).[4] A participant is defined as

> any employee or former employee of an employer, or any member or former member of an employee organization, *who is* or *may become eligible* to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be·eligible to receive any such benefit.

(Italics ours.) 29 U.S.C. § 1002(7).

It is not disputed that the employees here are "former employees" of Phillips. The issue is whether they "may become eligible to receive a benefit" under the plan. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 103 L. Ed. 2d 80, 109 S. Ct. 948 (1989) discusses the definition of "participant". There, Firestone sold its plastics division to Occidental Petroleum Company. The six employees were hired by Occidental but sought severance pay from Firestone. They brought an ERISA action in federal court for benefits. Firestone refused to provide information regarding the plan contending that because the sale was not a "reduction in work force", the employees were not participants and therefore not entitled to information regarding the plan. The dispute cen-

---

[4]29 U.S.C. § 1132(a)(2) provides:

"A civil action may be brought —

" . . . .

"(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;"

tered on the definition of the term "participant" found in 29 U.S.C. § 1002(7).

The Court's discussion of the term "participant" is instructive:

> In our view, the term "participant" is naturally read to mean either "employees in, or reasonably expected to be in, currently covered employment," *Saladino* v. *I. L. G. W. U. National Retirement Fund*, 754 F. 2d 473, 476 (CA2 1985), or former employees who "have . . . a reasonable expectation of returning to covered employment" or have "a colorable claim" to vested benefits, *Kuntz* v. *Reese*, 785 F. 2d 1410, 1411 (CA9) (*per curiam*), cert. denied, 479 U. S. 916 (1986). In order to establish that he or she "may become eligible" for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future. "This view attributes conventional meanings to the statutory language since all employees in covered employment and former employees with a colorable claim to vested benefits 'may become eligible.' A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the [phrase] 'may become eligible.' " *Saladino* v. *I. L. G. W. U.* National Retirement Fund, *supra*, at 476.

*Firestone*, at 117-18.

As the court noted in *Olson v. General Dynamics Corp.*, 960 F.2d 1418 (9th Cir. 1991), *cert. denied*, ___ U.S. ___, 119 L. Ed. 2d 588, 112 S. Ct. 2968 (1992), a plan must be in existence in order for the employees to potentially fall within the definition of participant. *See Scott v. Gulf Oil Corp.*, 754 F.2d 1499 (9th Cir. 1985); *Martori Bros. Distribs. v. James-Massengale*, 781 F.2d 1349 (9th Cir.), *amended*, 791 F.2d 799, *cert. denied*, 479 U.S. 949, 1018 (1986). The employees here have "neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits . . .". *Firestone*, at 118. They are not plan participants as defined by 29 U.S.C. § 1002(7)[5] nor do they claim to be. They do not have standing to bring an ERISA action. 29 U.S.C. § 1132(a). It would be ironic indeed if the employees, who

---

[5]The employees are participants in Phillips' original employee benefit plan, but that plan and its benefits are not at issue in this case.

admit they are not participants in the SSP, were denied state law causes of action by the adoption of a benefit program which followed their departure from Phillips.

The judgment of the trial court is affirmed and the case remanded for trial.

MUNSON, J., and SHIELDS, J. Pro Tem., concur.

Review granted at 123 Wn.2d 1018 (1994).