[No. 61160-2.   En Banc.   September 29, 1994.]

ALVIN B. CUTLER, ET AL, *Respondents*, v. PHILLIPS PETROLEUM COMPANY, *Petitioner*.

*John L. Williford*, Associate General Counsel, and *Janet M. Reasor; Paine, Hamblen, Coffin, Brooke & Miller*, by *Richard D. McWilliams* and *Simon R. Collins*, for petitioner.

*Evans, Craven & Lackie, P.S.*, and *Patrick M. Risken; Feltman, Gebhardt, Eymann & Jones* and *Richard C. Eymann*, for respondents.

SMITH, J. — Petitioner Phillips Petroleum Company (Phillips) seeks reversal of a published opinion of the Court of Appeals, Division Three, which affirmed and remanded for trial an order of the Spokane County Superior Court denying Phillips' motion to dismiss for failure to state a claim upon which relief may be granted in a suit by 12 former employees (Respondents) for negligence, outrage, breach of contract, negligent misrepresentation and fraud. We reverse the Court of Appeals.

## STATEMENT OF FACTS[1]

Respondents were employed by Petitioner Phillips Petroleum Company, a Delaware corporation with its principal place of business in Oklahoma, prior to December 1985. Most had served Phillips for over twenty years. In December 1985, Respondents worked for Phillips' fertilizer and chemical divisions in manufacturing plants located at Spokane and Finley.[2]

In December 1985, Phillips faced a threatened hostile takeover. It decided to liquidate some of its debts and other obligations by selling assets and transferring employees,

---

[1]This being a motion to dismiss for failure to state a claim under CR 12(b)(6), the statement of facts is based substantially on the complaint.

[2]First Amended Complaint for Damages; Clerk's Papers, at 18-20.

including the plants and employees at Spokane and Finley, to Cepex American of Amarillo, Texas (Cepex).[3]

The complaint alleges that in December 1985 Phillips' management team represented to Respondents that Phillips had protected them by contracting or otherwise agreeing with Cepex that any salary and benefits accrued by each of them with Phillips would not be reduced or eliminated by Cepex for a minimum of 2 years after the date of sale. The complaint also alleges that Phillips assured Respondents it would sell the plants to a company with the financial ability and commitment to run the business for a substantial period of time. The complaint further alleges Phillips led Respondents to believe retirement benefits accrued with Phillips to date would remain with Phillips; they would be eligible for early retirement benefits from Phillips after sale of the plants to Cepex; and Cepex would assume administration of all benefits due them from Phillips. The sale to Cepex occurred 3 months later on March 1, 1986.[4]

A request by one Respondent for transfer within Phillips was denied. Other employees not involved in this lawsuit were re-trained for new assignments within the company. The other Respondents acquiesced to employment with Cepex without requesting transfers within Phillips and without seeking outside employment. The complaint alleges it soon became apparent Cepex could not continue operation of the plants.[5]

On April 3, 1986, one month after the sale to Cepex, Phillips announced a "Special Separation Program", which included enhanced retirement benefits, severance pay, outplacement and housing assistance, and medical and life insurance benefits. Only "Phillips employees" who separated from the company during the three-month period from April 3 through July 1, 1986 were eligible. The program also included special additional compensation (Social Security

[3]Clerk's Papers, at 20.

[4]Clerk's Papers, at 20-21.

[5]Clerk's Papers, at 21.

make-up payments) for employees age 50 through 61 who chose early retirement.[6]

The complaint alleges Respondents believed they were eligible to take advantage of the special separation program based upon Phillips' prior assurances. Their requests were denied. Phillips informed them they were not "Phillips employees" on April 3, 1986. The Respondent whose prior request for transfer within the company had been denied was technically eligible for the special separation program under Phillips' guidelines because he was still a "Phillips employee" and had not acquiesced to employment with Cepex. Phillips retired him without choice under its old retirement system and without an opportunity to take advantage of the special separation program.[7]

The complaint also alleges that while Respondents were "vigorously encouraged" to go to Cepex along with the transfer of assets, Phillips employees of higher rank than Respondents were allowed to remain with Phillips after the sale long enough to avail themselves of the special separation program. The complaint further alleges those higher ranking Phillips employees knew of the special separation program "or its possibility" prior to the date of sale on March 1, 1986, but did not disclose its existence to any of the Respondents.[8]

On December 26, 1986, only 9 months after the sale, Respondents were laid off or otherwise separated from employment with Cepex despite the assurances and representations previously made to them by Phillips. The complaint alleges that as a consequence of its actions regarding elimination of Respondents' compensation and benefits, Phillips received a windfall from its retirement or pension trust which it used to reduce its outstanding debt and fight off any hostile takeover bid.[9]

---

[6]Clerk's Papers, at 21-22.

[7]Clerk's Papers, at 22.

[8]Clerk's Papers, at 23.

[9]Clerk's Papers, at 23.

On February 28, 1989, six employees filed a complaint against Phillips in Spokane County Superior Court. The employees at Finley originally filed a suit in Benton County, which was transferred to Spokane County and consolidated with that case. Respondents seek damages for Phillips' negligence, outrage, breach of contract, negligent misrepresentation and fraud. In addition, on behalf of six of the twelve Respondents, the complaint seeks damages for age discrimination under RCW 49.60 and 29 U.S.C. § 621 *et seq.* and breach of fiduciary duty for unlawful interference with their rights as participants in the special separation program under ERISA, 29 U.S.C. § 1101 *et seq.* The complaint also seeks damages for benefits unlawfully withheld under RCW 49.46.010,. RCW 49.52.050 and .070, which together provide that an employer who pays lower wages than the employer is obligated to pay an employee or who receives a rebate from an employee's wages is guilty of a misdemeanor and the employee may recover two times the lost wages plus costs and attorney fees.[10]

Phillips moved to dismiss for failure to state a claim upon which relief can be granted pursuant to CR 12(b)(6). On December 20, 1991, the trial court, the Honorable Richard J. Schroeder, granted the motion in part. The court determined the claim for breach of fiduciary duty under ERISA was clearly pre-empted by 29 U.S.C. § 1132(e). It also determined the claim for benefits unlawfully withheld under RCW 49.46.010, RCW 49.52.050 and .070 was pre-empted by ERISA because it is "related to an employee benefit plan". The other six causes of action were not dismissed. The court determined they were state law claims independent of the ERISA claim and that the benefits plan (special separation plan) was merely one measure of damages. The court filed its order as a "final judgment" on March 6, 1992.[11]

Phillips appealed the trial court's order to the Court of Appeals, Division Three, but did not appeal the trial court's

---

[10]First Amended Complaint for Damages, at 7-12; Clerk's Papers, at 23-28.

[11]Clerk's Papers, at 128-42.

ruling on the age discrimination issue. The Court of Appeals accepted review on the five remaining causes of action (negligence, outrage, breach of contract, negligent misrepresentation and fraud). On October 21, 1993, the Court of Appeals, the Honorable Dennis J. Sweeney writing, affirmed the reasoning of the trial court and remanded for trial.[12]

Phillips moved this court for discretionary review of the decision of the Court of Appeals, Division Three. We granted review on April 6, 1994.

### QUESTION PRESENTED

The question presented in this case is whether claims for negligence, outrage, breach of contract, negligent misrepresentation and fraud "relate to an employee benefit plan" under the exclusive jurisdiction of the Federal Employee Retirement Income Security Act of 1974 (ERISA) to the extent that they are pre-empted by federal law and require dismissal from state court.

### DISCUSSION

### State of Review

■ ■ A trial court's ruling on a motion to dismiss for failure to state a claim upon which relief can be granted under CR 12(b)(6) is a question of law and is reviewed de novo by an appellate court.[13] Courts should dismiss a claim under CR 12(b)(6) only if it appears beyond a reasonable doubt that no facts exist that would justify recovery. "Under this rule, a plaintiff's allegations are presumed to be true", and "a court may consider hypothetical facts not part of the formal record." CR 12(b)(6) motions should be granted "sparingly and with care" and "only in the unusual case in which plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief."[14]

---

[12]*Cutler v. Phillips Petroleum Co.*, 71 Wn. App. 511, 859 P.2d 1251 (1993). Neither party questioned the appealability of the trial court's order.

[13]*Hoffer v. State,* 110 Wn.2d 415, 420, 755 P.2d 781 (1988), *aff'd on rehearing,* 113 Wn.2d 148, 776 P.2d 963 (1989); *Guillory v. County of Orange,* 731 F.2d 1379, 1381 (9th Cir. 1984).

[14]*Hoffer,* at 420 (quoting 5 Charles A. Wright &Arthur R. Miller, *Federal Practice* § 1357, at 604 (1969)); *Orwick v. Seattle,* 103 Wn.2d 249, 254, 692 P.2d

CR 12(b)(6) provides:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted, . . .. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. . . . If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, he may assert at the trial any defense in law or fact to that claim for relief. If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by rule 56.

## Structure of ERISA

The Employee Retirement Income Security Act of 1974[15] provides a comprehensive system for federal regulation of private employee benefit plans, including pension and welfare plans. A welfare plan includes, among other things, any "plan, fund, or program" maintained for the purpose of providing medical or other health benefits for employees or their beneficiaries "through the purchase of insurance or otherwise".[16] Subject to certain exemptions, ERISA applies generally to all employee benefit plans sponsored by an employer or employee organization.[17] "The statute imposes participation, funding, and vesting requirements on pension plans. It also sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibil-

---

793 (1984); *Corrigal v. Ball & Dodd Funeral Home, Inc.* 89 Wn.2d 959, 961, 577 P.2d 580 (1978); *Lawson v. State,* 107 Wn.2d 444, 448, 730 P.2d 1308 (1986); *Bowman v. John Doe,* 104 Wn.2d 181, 183, 704 P.2d 140 (1985); *Halvorson v. Dahl,* 89 Wn.2d 673, 675, 574 P.2d 1190 (1978). *See* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice* § 1357, at 344 (1990); 27 Federal Procedure *Pleadings and Motions* § 62:465 (1984).

[15]Pub. L. No. 406, 88 Stat. 829 (current version at 29 U.S.C. § 1101 *et seq.).*

[16]29 U.S.C. § 1002(1).

[17]29 U.S.C. § 1003(a).

ity, for both pension and welfare plans."[18] In order to safeguard this integrated regulatory system, Congress provided, among other things, a " ' "carefully integrated" ' civil enforcement scheme that 'is one of the essential tools for accomplishing the stated purposes of ERISA',"[19] that is, a prohibition against interference with rights protected by ERISA[20] and ERISA's broad pre-emption.[21]

ERISA Pre-Emption of State Law

29 U.S.C. § 1144(a) (ERISA § 514(a)) provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall *supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan* described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

(Italics ours.)

■ Under the United States Supreme Court's broad interpretation of ERISA's pre-emption language,[22] a state law "relates to" an employee benefit plan "if it has a *connection with or reference to* such a plan."[23] But if the effect on

---

[18]*Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 137, 112 L. Ed. 2d 474, 111 S. Ct. 478 (1990) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90-91, 77 L. Ed. 2d 490, 103 S. Ct. 2890 (1983)).

[19]*Ingersoll-Rand,* 498 U.S. at 137 (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 52, 54, 95 L. Ed. 2d 39, 107 S. Ct. 1549 (1987)); 29 U.S.C. § 1132(a) (ERISA § 502(a)).

[20]29 U.S.C. § 1140 (ERISA § 510).

[21]29 U.S.C. § 1144(a) (ERISA § 514(a)).

[22]*District of Columbia v. Greater Wash. Bd. of Trade,* 506 U.S. 125, 121 L. Ed. 2d 513, 113 S. Ct. 580 (1992); *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 138-39, 112 L. Ed. 2d 474, 111 S. Ct. 478 (1990); *FMC Corp. v. Holliday,* 498 U.S. 52, 58, 112 L. Ed. 2d 356, 111 S. Ct. 403 (1990); *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 829, 100 L. Ed. 2d 836, 108 S. Ct. 2182 (1988); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45-47, 95 L. Ed. 2d 39, 107 S. Ct. 1549 (1987); *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 732-33, 85 L. Ed. 2d 728, 105 S. Ct. 2380 (1985); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 99-100, 77 L. Ed. 2d 490, 103 S. Ct. 2890 (1983). Accord *Puget Sound Elec. Workers Health & Welfare Trust Fund v. Merit Co.,* 123 Wn.2d 565, 568-70, 870 P.2d 960 (1994); *Boutillier v. Libby, McNeill & Libby, Inc.,* 42 Wn. App. 699, 713 P.2d 1110, *review denied,* 106 Wn.2d 1005 (1986).

[23](Italics ours.) *Shaw,* 463 U.S. at 97.

the plan is "too tenuous, remote, or peripheral", the state action does not "relate to" the plan and pre-emption is not required.[24] In *District of Columbia v. Greater Wash. Bd. of Trade,* 506 U.S. 125, 121 L. Ed. 2d 513, 113 S. Ct. 580 (1992) the court stated:

> This reading is true to the ordinary meaning of "relate to," and thus gives effect to the "deliberately expansive" language chosen by Congress. Under § 514(a), ERISA pre-empts any state law that *refers to or has a connection with* covered benefit plans (and that does not fall within a § 514(b) exception) "even if the law is not specifically designed to affect such plans, or the effect is only indirect," and even if the law is "consistent with ERISA's substantive requirements".[25]

(Citations omitted. Italics ours.)

In *District of Columbia v. Greater Wash. Bd. of Trade, supra,* the Supreme Court determined that a law which related primarily to workers' compensation was pre-empted by ERISA. The purpose of the statute was to fully compensate injured workers who, when healthy, normally receive payment from their employer in cash, medical insurance and other benefits. The regulations existing prior to enactment of the District of Columbia worker's compensation equity amendment act of 1990,[26] section 2(c)(2), only required payments to injured workers, during their period of disability, in amounts equivalent to 50 percent of their average weekly salaries. Many injured workers did not receive the full entitlement intended by the original statute.

---

[24]*Shaw,* at 100 n.21.

[25]*District of Columbia v. Greater Wash. Bd. of Trade,* 113 S. Ct. at 583 (citing Black's Law Dictionary 1288 (6th ed. 1990); *Pilot Life,* 481 U.S. at 46; *Ingersoll-Rand,* 498 U.S. at 139; *Metropolitan Life,* 471 U.S. at 739). *See Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 119 L. Ed. 2d 157, 112 S. Ct. 2031, 2037 (1992), where the Court recently applied the same meaning of "relates to" in ERISA to the "relating to" language of the pre-emption clause in the Airline Deregulation Act of 1978, 49 U.S.C. app. § 1301 *et seq.* (ADA), concluding that a claim for deceptive advertising under general consumer protection statutes of Texas was pre-empted by the ADA even though the specific language of the ADA only prohibits states from enforcing any law "relating to rates, routes, or services" of any air carrier (49 U.S.C. app. § 1305(a)(1)).

[26]D.C. Code Ann. § 36-301 to § 36-345 (1993 &Supp. 1994).

The Court concluded that "[s]ection 2(c)(2) of the District's Equity Amendment Act specifically refers to welfare benefit plans regulated by ERISA and on that basis alone is preempted." It observed that the health insurance coverage required by the District of Columbia under the act "is measured by reference to 'the existing health insurance coverage' provided by the employer" which "in turn, is a welfare benefit plan . . . subject to ERISA regulation . . . and any state law imposing requirements by reference to such covered programs must yield to ERISA."[27] This conclusion was reached despite the fact that plans "maintained solely for the purpose of complying with applicable workmen's compensation laws" are specifically exempt from ERISA coverage.[28]

The determinative factor for the Court in *District of Columbia v. Greater Wash. Bd. of Trade, supra,* was that the regulation "referred to" ERISA-covered plans. This gives a stronger impact to milder qualifying language than in the previous case of *Shaw v. Delta Air Lines, Inc.,*[29] which concluded that if the effect on an ERISA-covered plan is "too tenuous, remote, or peripheral", the state action does not "relate to" the plan and pre-emption is not required.[30] The Supreme Court seems now to be moving in the direction of an absolute pre-emption of state law by ERISA.[31]

---

[27]*District of Columbia v. Greater Wash. Bd. of Trade,* 113 S. Ct. at 583-84 (citing *Mackey v. Lanier Collection Agency &Serv., Inc.,* 486 U.S. at 828 n.2, 829-30, where the court struck down a Georgia statute which attempted to carry out the substance of an ERISA provision. In that case, garnishment of ERISA welfare plan funds was not permitted under the new Georgia statute. However, a general and older Georgia statute permitted garnishment of any funds. The mere fact that ERISA-covered plans were mentioned was enough to pre-empt and invalidate the new statute. However, the general and older garnishment statute was not pre-empted, even though it could be enforced against ERISA welfare plans).

[28]29 U.S.C. § 1003(b)(3).

[29]463 U.S. 85, 77 L. Ed. 2d 490, 103 S. Ct. 2890 (1983).

[30]*Shaw,* 463 U.S. at 100 n.21.

[31]*See District of Columbia v. Greater Wash. Bd. of Trade,* 113 S. Ct. at 585-88 (Stevens, J., dissenting).

This court in *Puget Sound Elec. Workers Health & Welfare Trust Fund v. Merit Co.,* 123 Wn.2d 565, 870 P.2d 960 (1994) acknowledged the broad nature of pre-emption under ERISA and analyzed the approach to ERISA pre-emption articulated by the United States Supreme Court.[32] We concluded that Washington's public works lien statutes[33] were pre-empted by ERISA.[34]

In a case similar to the one now before this court, the United States Supreme Court determined that state common law tort and contract claims are pre-empted if they "refer to" and are " 'premised on' the existence of an ERISA-covered pension plan." In *Ingersoll-Rand Co. v. McClendon,*[35] the plaintiff filed suit in a Texas state court seeking "compensatory and punitive damages under various tort and contract theories; he did not assert any cause of action under ERISA."[36] The Court noted that the Texas Supreme Court concluded the suit was not pre-empted by ERISA because the plaintiff was "*not* seeking lost *pension benefits* but [was] instead seeking lost future wages, mental anguish and punitive damages as a result of the wrongful discharge."[37] The Court nevertheless found explicit and implied pre-emption under ERISA.

In finding explicit pre-emption under ERISA § 514(a), 29 U.S.C. § 1144(a), the Court reasoned that:

> The Texas cause of action makes specific reference to, and indeed is premised on, the existence of a pension plan. In the words of the Texas court, the cause of action "allows recovery

---

[32]*Puget Sound Elec. Workers Health & Welfare Trust Fund v. Merit Co.,* 123 Wn.2d at 568-70 (citing *Shaw; Metropolitan Life; Pilot Life; Ingersoll-Rand). See also Boutillier v. Libby, McNeill & Libby, Inc.,* 42 Wn. App. 699, 713 P.2d 1110 (finding ERISA pre-emption even when state action only "indirectly" impacts an ERISA-covered plan), *review denied,* 106 Wn.2d 1005 (1986).

[33]RCW 39.08 and RCW 60.28.

[34]*Puget Sound Electrical Workers,* at 573.

[35]498 U.S. 133, 112 L. Ed. 2d 474, 111 S. Ct. 478 (1990).

[36]*Ingersoll-Rand,* at 136.

[37]*Ingersoll-Rand,* at 136 (quoting *McClendon v. Ingersoll-Rand Co.,* 779 S.W.2d 69, 71 (Tex. 1989).

when the plaintiff proves that the principal reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund." Thus in order to prevail, a plaintiff must plead, and the court must find, that an ERISA plan exists and the employer had a pension-defeating motive in terminating the employment. *Because the court's inquiry must be directed to the plan, this judicially created cause of action "relate[s] to" an ERISA plan.*[38]

■ The Court also found that if no express pre-emption provision existed under ERISA § 514(a), 29 U.S.C. § 1144(a), the cause of action would still be pre-empted "because it conflicts directly with an ERISA cause of action . . . [since it] falls squarely within the ambit of ERISA § 510 [29 U.S.C. § 1140]."[39] The provision states in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan *. . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled* under the plan . . ..

(Italics ours.) 29 U.S.C. § 1140.

The Court observed that "[t]he mere existence of a federal regulatory or enforcement scheme . . . does not by itself imply pre-emption of state remedies."[40] Thus it looked to ERISA § 502(a), 29 U.S.C. § 1132(a), the civil enforcement mechanism, as a "special feature[] warranting pre-emption."[41] That section, enacted as 29 U.S.C. § 1132(a)(3) and (e), provides in relevant part:

> (a) A civil action may be brought —
>
> . . . .
>
> (3) by a participant . . . (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable

---

[38](Italics ours.) *Ingersoll-Rand,* at 140 (quoting *McClendon,* 779 S.W.2d at 71).

[39]*Ingersoll-Rand,* at 142.

[40]*Ingersoll-Rand,* at 143 (quoting *English v. GE Co.,* 496 U.S. 72, 87, 110 L. Ed. 2d 65, 110 S. Ct. 2270 (1990)).

[41]*Ingersoll-Rand,* at 143 (quoting *English v. GE Co.,* 486 U.S. at 87 (quoting *Hillsborough Cy., Fla. v. Automated Med. Labs., Inc.,* 471 U.S. 707, 719, 85 L. Ed. 2d 714, 105 S. Ct. 2371 (1985))).

relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

. . . .

(e) . . . .

(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have *exclusive jurisdiction* of civil actions under this subchapter brought by . . . a participant[.]

(Italics ours.)

The Court concluded that "Congress intended § 502(a) [29 U.S.C. § 1132(a), (e)] to be the exclusive remedy for rights guaranteed under ERISA, including those provided by § 510 [29 U.S.C. § 1140 ]."[42] The court stated:

As we explained in *Pilot Life,* ERISA's legislative history makes clear that "the pre-emptive force of § 502(a) was modeled on the exclusive remedy provided by § 301 of the Labor Management Relations Act, 1947 (LMRA), 61 Stat. 156, 29 U.S.C. § 185." "Congress was well aware that the powerful pre-emptive force of § 301 of the LMRA displaced" all state-law claims, "even when the state action purported to authorize a remedy unavailable under the federal provision."[43]

In this case, the trial court determined that the claim for breach of fiduciary duty under ERISA was clearly pre-empted by 29 U.S.C. § 1132(e). It also determined the claim for benefits unlawfully withheld under RCW 49.46.010, RCW 49.52.050 and .070 was also pre-empted by ERISA under 29 U.S.C. § 1144(a) because it is "related to an employee benefit plan".

Respondents assert, and the trial court and the Court of Appeals agreed, that their claims for negligence, outrage, breach of contract, negligent misrepresentation and fraud are not "premised on" the ERISA claims dismissed by the trial court. However, as Petitioner Phillips points out, the essence of the claims is the Respondents' perceived loss of benefits under the special separation plan. Petitioner cites paragraph XVI of the complaint, which states:

---

[42]*Ingersoll-Rand,* at 144 (citing *Pilot Life,* 481 U.S. at 54).

[43](Citation omitted.) *Ingersoll-Rand,* at 144 (quoting *Pilot Life,* 481 U.S. at 52, 54-55 (citing H.R. Conf. Rep. No. 1280, at 327, 93d Cong. (1974))).

By offering the early retirement programs, selling employees as assets, and by refusing to allow employees, including certain of the plaintiffs, any opportunity to take advantage of the early retirement program, defendant Phillips received a windfall from its retirement or pension trust, which was thereafter used to reduce defendant Phillips' outstanding debt and to fight off any hostile takeover bid.[44]

Under the reasoning of the United States Supreme Court in *Ingersoll-Rand,* this lawsuit is pre-empted because the complaint makes specific reference to existence of a pension plan. Respondents pleaded that an ERISA plan exists and that Phillips had a pension-defeating motive in terminating their employment. "Because the court's inquiry must be directed to the plan, this judicially created cause of action 'relate[s] to' an ERISA plan."[45] Under this rationale, the remaining common law tort and contract claims are explicitly pre-empted by ERISA § 514(a), 29 U.S.C. § 1144(a).

Even if they were not explicitly pre-empted, these claims would be implicitly pre-empted under ERISA § 502(a), 29 U.S.C. § 1132(a), (e). The Court in *Ingersoll-Rand* reiterated that when Congress patterned ERISA § 502 after LMRA § 301,[46] it "was well aware that the powerful pre-emptive force of § 301 of the LMRA displaced" all state court claims "even when the state action purported to authorize a remedy unavailable under the federal provision."[47]

■ Respondents assert that if their claims are not allowed to proceed in state court, they will not have a forum in the federal courts. This is a matter which should be addressed to the federal courts. The United States Supreme Court in *Ingersoll-Rand* stated that

[T]he pre-emptive effect of § 502(a) [is] so complete that an ERISA pre-emption defense provides a sufficient basis for removal of a cause of action to the federal forum notwithstand-

---

[44]Clerk's Papers, at 23.

[45]*Ingersoll-Rand,* at 140.

[46]National Labor Relations Act, 1947 § 301, 61 Stat. 136, 156 (current version at 29 U.S.C. § 185).

[47]*Ingersoll-Rand,* at 144 (quoting *Pilot Life,* at 55).

ing the traditional limitation imposed by the "well-pleaded complaint" rule.[48]

. . . .

. . . Not only is § 502(a) the exclusive remedy for vindicating § 510-protected rights, there is no basis in § 502(a)'s language for limiting ERISA actions to only those which seek "pension benefits." It is clear that the relief requested here is well within the power of federal courts to provide.[49]

Respondents might have had valid common law tort and contract claims in the state court if they were completely unrelated to an ERISA-covered plan. However, that is not the case under these facts. The most significant loss they suffered was their inability to participate in the ERISA-covered plan. They brought this lawsuit primarily demanding damages equivalent to the value of benefits under the plan. They claim Phillips encouraged them to transfer their employment to Cepex in order to, among other things, exclude them from participation in the ERISA-covered special separation program. Because the court's inquiry must be directed to the plan, the entire action falls within the scope of ERISA preemption.[50]

Respondents attempt to distinguish *Ingersoll-Rand* by citing cases from lower federal courts.[51] However, they ignore the broad language used by the Supreme Court in *District of Columbia v. Greater Wash. Board of Trade,* a 1992 decision concerning ERISA and pre-emption of state law.[52] Thus, regardless what lower federal courts may have ruled to avoid the result in *Ingersoll-Rand,* the United States

---

[48]*Ingersoll-Rand,* at 145 (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 64-67, 95 L. Ed. 2d 55, 107 S. Ct. 1542 (1987)).

[49]*Ingersoll-Rand,* at 145.

[50]*See Ingersoll-Rand,* at 140.

[51]*See Jaskilka v. Carpenter Technology Corp.,* 757 F. Supp. 175, 178 (D.C. Conn. 1991) (distinguishing cases where benefits lost are "relevant only to the issue of damages"). *See also Saylor v. Parker Seal Co.,* 975 F.2d 252 (6th Cir. 1992); *Samuel v. Langham,* 780 F. Supp. 424 (N.D. Tex. 1992); *Sperling v. Texas Health Enters., Inc.,* 791 F. Supp. 662, 665 (S.D. Tex. 1992); *Howard v. Indiana Mich. Power Co.,* 812 F. Supp. 135 (S.D. Ind. 1992); *Klank v. Sears, Roebuck & Co.,* 735 F. Supp. 260 (N.D. Ill. 1990).

[52]*See District of Columbia v. Greater Wash. Bd. of Trade, supra.*

Supreme Court now clearly requires pre-emption in cases where state courts must inquire into the existence of an ERISA-covered plan in order to determine whether the employer had a pension-defeating motive or in cases in state courts where the action "refers to" an ERISA-covered plan. The result is the same even if the case does not involve administration of a plan or litigation concerning a plan, plan-fiduciaries, employers and beneficiaries.

Whether Respondents would have standing under ERISA to bring their claims in federal court as "participants" in the special separation program is of little significance on the issue of pre-emption. The United States Supreme Court has made it clear that when pre-emption applies in the ERISA context, it sweeps aside even state laws which are consistent with the substance of the ERISA provisions. The court has also stated that " 'good intentions' do not save a state law within the broad pre-emptive scope of § 514(a) [29 U.S.C. § 1144(a)e;]."[53] Providing an adequate forum for ERISA-related claims is for the Congress and not for the legislatures or courts of individual states.

### Summary and Conclusions

Respondents' claims for breach of fiduciary duty and for interference with attainment of benefits were properly dismissed by the trial court based upon ERISA pre-emption. The claim for age discrimination was not dismissed and is not before this court.

Respondents' five remaining claims for negligence, outrage, breach of contract, negligent misrepresentation and fraud should also have been dismissed under ERISA pre-emption. It is clear from the language of their complaint that Respondents' lawsuit is "premised on" their claim of interference with attainment of benefits under ERISA § 510, 29 U.S.C. § 1140. The United States Supreme Court in *Ingersoll-Rand* determined that if a state court must inquire whether a benefit plan exists in order to determine whether a claim exists, then a cause of action is "premised on" and

---

[53]*See Mackey v. Lanier Collection Agency & Serv.*, 486 U.S. at 829-30.

therefore "related to" an ERISA-covered plan. Under ERISA § 514(a), 29 U.S.C. § 1144(a), if a state law "relates to" an ERISA-covered plan, it is explicitly pre-empted. Even if these causes of action were not explicitly pre-empted, they would be implicitly pre-empted under ERISA § 502(a), 29 U.S.C. § 1132(a) and *Ingersoll-Rand*.

We reverse the Court of Appeals and dismiss the five causes of action before this court because they are pre-empted under ERISA.

UTTER, BRACHTENBACH, DOLLIVER, DURHAM, JOHNSON, and MADSEN, JJ., concur.

ANDERSEN, C.J., concurs in the result.