[No. 51098-3-I.    Division One.    December 6, 2004.]

PARADISE, INC., *Respondent*, v. PIERCE COUNTY, *Appellant*.

760

*Gerald A. Horne, Prosecuting Attorney*, and *Bertha B. Fitzer, Deputy*, for appellant.

*Ronald J. Meltzer* and *W. John Sinsheimer* (of *Sinsheimer & Meltzer*), for respondent.

¶1 Cox, C.J. — At issue in this appeal is whether the Pierce County ordinance banning social card rooms constitutes either a taking or a denial of due process. We must also decide whether Pierce County is estopped from enforcing the ordinance and whether that ordinance either violates equal protection or is in conflict with and thus preempted by state statute.

¶2 We reach the substantive issues in this appeal and hold that the ordinance does not constitute either a taking or a denial of due process. The County is not estopped from enforcing the ordinance. And the ordinance does not violate the equal protection clause. The ordinance is not preempted on the grounds that Paradise, Inc., argued. We reverse.

¶3 The gambling act of 1973 (RCW 9.46.010-.903) limits the nature and scope of gambling activities and subjects such activities to strict regulation and control.[1] In 1974, the Legislature enacted RCW 9.46.295, which legalizes gambling in counties, but allows counties and cities to prohibit at any time such activity within their respective jurisdictions.

¶4 In 1997, gambling regulations changed to allow "house-banked" gaming.[2] RCW 9.46.070(2) provides that the state gambling commission may "authorize and issue licenses for a period not to exceed one year to any ... business primarily engaged in the selling of items of food or drink for consumption on the premises, ... to conduct social card games as a commercial stimulant." The Washington State Gambling Commission enacted rules for such gaming and provided for a pilot program to study the Commission's proposed rules.[3]

¶5 In 1998, Paradise, Inc. (Paradise) applied to the Commission to participate in the enhanced gaming card room pilot program. Prior to entering the program for enhanced gaming, Paradise operated a bowling alley and restaurant with a five-table social card room. The pilot program permitted operation of up to 15 tables.[4]

¶6 Acceptance into the program required Paradise to install a security system and other improvements. Paradise obtained a permit from the County to install the improvements and remodel the premises. Paradise obtained a license to operate under the pilot program until March 31, 2000.

¶7 Paradise began operating an enhanced gaming room in January 1999. The facility is situated next to a church and parochial school, near Pacific Lutheran University. After several other entities applied for gaming licenses in

---

[1] RCW 9.46.010-.903.

[2] A "house-banked" game is one in which the house bets against the players.

[3] WAC 230-40-900.

[4] RCW 9.46.0282.

the area, citizens complained to the county council. The council held two hearings regarding a potential ban on gaming. Paradise testified at both hearings.

¶8 In July 1999, the council adopted ordinance 99-80, banning for-profit social card games. The ordinance is set out in Pierce County Code 9.52.010 and .020, and states:

> The operation or conduct of social card games as defined by RCW 9.46.0282 is prohibited within unincorporated Pierce County.
>
> A. Bona fide charitable or nonprofit organizations may operate or conduct social card games pursuant to RCW 9.46.0311.
>
> B. *Social card games operating and open for business on or before the effective date of this Ordinance may be conducted and operated in accordance with the provisions of Chapter 9.46 RCW and the rules and regulations adopted thereunder until August 15, 2002.*[5]

¶9 Nearly two years following the County's adoption of the ordinance, Paradise commenced this action seeking damages as well as declaratory and injunctive relief. Paradise claimed that the ordinance was invalid in that it violated equal protection and substantive and procedural due process, and constituted a taking. It also sought a determination that the County was equitably estopped from enforcing the ordinance against Paradise and an injunction prohibiting the County from enforcing the ordinance. In addition, Paradise sought substantial damages.

¶10 In 2001, the County moved pursuant to CR 12(b)(6) to dismiss all claims as a matter of law. The trial court denied the motion. The County sought discretionary review, which this court denied.

¶11 In July 2002, just prior to the commencement of the trial of this action, the County again moved to dismiss, focusing on the statute of limitations, regulatory taking, equal protection, and equitable estoppel claims. The motion did not address the due process claims of Paradise. The trial court granted the motion in part by dismissing the equal

---

[5] (Emphasis added.)

protection claim and ruling that RCW 9.46.295 does not preempt the ordinance, there being no conflict between the two. The matter proceeded to trial.

¶12 A jury found by special verdict that the ordinance constituted a wrongful taking. Further, the jury found that the ordinance violated Paradise's due process rights. The jury awarded damages of $1.5 million to Paradise for the wrongful taking. Paradise elected to have the court issue an injunction against enforcement of the ordinance against it in lieu of a money judgment on the jury verdict for damages against the County.

¶13 After the jury's verdict, the trial court found separately that the County was estopped from enforcing the ordinance.

¶14 The County appeals, and Paradise cross-appeals.

## STATUTE OF LIMITATIONS

¶15 The County first claims that this action is untimely because Paradise did not commence it within a reasonable period of time following passage of the challenged ordinance. Specifically, the County claims a reasonable period of time is any one of four analogous time periods that should govern this case. Paradise counters that the governing limitations period is three years under RCW 4.16.080(2) because it claims an injury to its personal property, the license.

¶16 While this question is interesting, we decline to resolve it in this case. Rather, because of the importance of the substantive issues to the parties, we assume without deciding and for purposes of this opinion only that the action was timely.

## TAKING

¶17 The County argues that the trial court erred in failing to grant its CR 12(b)(6) motion to dismiss this claim. We agree.

■■ ¶18 A trial court's ruling on a motion to dismiss for failure to state a claim upon which relief can be granted under CR 12(b)(6) is a question of law that we review de novo.[6] Trial courts should dismiss a claim under CR 12(b)(6) only if it appears beyond a reasonable doubt that no facts exist that would justify recovery.[7] "Under this rule, a plaintiff's allegations are presumed to be true," and "a court may consider hypothetical facts not part of the formal record."[8] CR 12(b)(6) motions should be granted "sparingly and with care" and "only in the unusual case in which plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief."[9]

■ ■ ¶19 To preserve issues for appeal, the moving party must "renew and support his pleaded objections by objections to evidence, and by requesting rulings and instructions . . . which he deems necessary to protect and preserve the point asserted by his motion to dismiss."[10] After denial of the CR 12(b)(6) motion, the County renewed its objections through proposed jury instructions and a motion for directed verdict. Thus, the County preserved for our review the denial of its CR 12(b)(6) motion.

¶20 Our decision in *Edmonds Shopping Center Associates v. City of Edmonds*[11] controls our resolution of this issue. We note that the decision had not been published at the time the trial court considered the County's motion.

¶21 In that case, we applied legal principles articulated in *Guimont v. Clarke*[12] and other precedents to a municipal ordinance very similar to the one here. That ordinance

---

[6] *Cutler v. Phillips Petroleum Co.*, 124 Wn.2d 749, 755, 881 P.2d 216 (1994) (citing *Hoffer v. State*, 110 Wn.2d 415, 420, 755 P.2d 781 (1988), *aff'd on reh'g*, 113 Wn.2d 148, 776 P.2d 963 (1989)).

[7] *Cutler*, 124 Wn.2d at 755.

[8] *Cutler*, 124 Wn.2d at 755.

[9] *Cutler*, 124 Wn.2d at 755 (citations omitted).

[10] *Mims v. Cent. Mfrs. Mut. Ins. Co.*, 178 F.2d 56, 59 (5th Cir. 1949).

[11] 117 Wn. App. 344, 71 P.3d 233 (2003).

[12] 121 Wn.2d 586, 854 P.2d 1 (1993), *cert. denied*, 510 U.S. 1176 (1994).

involved the same state statutes at issue in this case. We held that the ordinance did not constitute a taking.

¶22 Here, as in *Edmonds*, there are two threshold questions. First, "whether the regulation destroys or derogates any fundamental attribute of property ownership, including the right to possess, to exclude others, to dispose of property, or to make some economically viable use of the property.[13] If the landowner claims less than a 'physical invasion' or a 'total taking' and if a fundamental attribute of ownership is not otherwise implicated," then we reach the second threshold question: "whether the challenged regulation safeguards the public interest in health, safety, the environment, or the fiscal integrity of an area or whether the regulation ' "seeks less to prevent a harm than to impose on those regulated the requirement of providing an affirmative public benefit." ' "[14] We stated that, "[i]f the answer to both threshold questions is no, then there is no taking."[15] If, however, the answer to either question is yes, we must determine "whether the regulation advances a legitimate state interest" and whether "the state interest in the regulation is outweighed by its adverse economic impact to the landowner."[16] In either event, these are legal questions to be decided by a court, not by a jury.

¶23 For purposes of our review of the CR 12(b)(6) motions, the narrow question is whether, applying the principles stated in *Guimont* and *Edmonds*, the record demonstrated beyond a reasonable doubt that no facts existed that would justify recovery. In making this assessment, we accept as true the allegations of Paradise's complaint and any reasonable inferences arising therefrom.

¶24 In that motion, the County argued that no taking occurred by the passage of the ordinance. First, it pointed out that there was no physical taking of Paradise's prop-

---

[13] *Edmonds*, 117 Wn. App. at 362.

[14] *Edmonds*, 117 Wn. App. at 362 (quoting *Guimont*, 121 Wn.2d at 603).

[15] *Edmonds*, 117 Wn. App. at 362.

[16] *Edmonds*, 117 Wn. App. at 363.

erty, and that Paradise was not deprived of all economically viable use of its land. Second, the County also argued that passage of the ordinance was a valid exercise of the police power under RCW 9.46.295.

¶25 While conceding that its complaint did not contain specific facts to refute these assertions by the County, Paradise took the position that there was a taking. It based its assertion on its contention that (1) it had made a large investment to reconfigure its building to accommodate enhanced gaming, with the County's knowledge and approval, (2) it had a reasonable investment-backed expectation that it would be allowed to conduct an enhanced gaming operation for sufficient time to recoup its investment, (3) the economic impact of the ordinance substantially destroyed the value of the investment, and (4) the County had no legitimate interest in enforcing the ordinance. Paradise also appears to have claimed that the gaming business is lawful and that the County implicitly may not regulate it.

¶26 The court denied the County's motion, and the case ultimately proceeded to trial and a jury verdict in favor of Paradise on the taking issue. On appeal, Paradise argues that substantial evidence supports the jury verdict in its favor on this question. It argues that there was no evidence of social ills associated with Paradise's operation. Paradise further argues that the ordinance imposes on it a financial burden that should be shared by the entire community and outweighs the state interest in the regulation.[17] In sum, Paradise argues that the jury properly weighed the factors articulated in *Guimont* and other cases, and reached a correct decision.

¶27 The focus of our analysis for purposes of reviewing the CR 12(b)(6) motion, however, is not on whether there was substantial evidence to support the jury's verdict. Rather, the question is whether it appeared beyond a

---

[17] *Edmonds*, 117 Wn. App. at 363; *Presbytery of Seattle v. King County*, 114 Wn.2d 320, 329, 787 P.2d 907 (1990).

reasonable doubt that no facts existed that would justify recovery. We conclude that there were no such facts.

¶28 As *Guimont* and *Edmonds* articulate, the first threshold question in a taking challenge is "whether the regulation destroys or derogates any fundamental attribute of property ownership, including the right to possess, to exclude others, to dispose of property, or to make some economically viable use of the property."[18] Examination of the record makes clear that the only answer to this question was that the ordinance did not eliminate all economically viable use of the property. All that was affected by the ordinance was gaming, not the bowling and restaurant business in which Paradise had been engaged prior to the enhanced gaming license it obtained as part of a pilot program. In short, the ordinance did not destroy or derogate any fundamental attribute of property ownership. There was no destruction or derogation of any fundamental attribute of ownership—no total taking.

¶29 We move to the second threshold question: "[i]f the landowner claims less than a 'physical invasion' or a 'total taking' and if a fundamental attribute of ownership is not otherwise implicated. . . . whether the challenged regulation safeguards the public interest in health, safety, the environment, or the fiscal integrity of an area or whether the regulation ' "seeks less to prevent a harm than to impose on those regulated the requirement of providing an affirmative public benefit." ' "[19]

¶30 Here, Paradise does claim less than a "physical invasion" or a "total taking," as we understand its claim from examination of the complaint and a review of its opposition to that motion. Moreover, no fundamental attribute of ownership is otherwise implicated. Thus, we must consider "whether the challenged regulation safeguards the public interest in health, safety, the environment, or the fiscal integrity of an area or whether the regulation "seeks less to

---

[18] *Edmonds,* 117 Wn. App. at 362.

[19] *Edmonds,* 117 Wn. App. at 362 (quoting *Guimont,* 121 Wn.2d at 603).

prevent a harm than to impose on those regulated the requirement of providing an affirmative public benefit." ' " It is this second aspect of the test on which Paradise primarily grounds its objection to the ordinance as a taking.

¶31 Necessarily implicit in the challenge that Paradise makes to the ordinance is the argument that its passage is not a valid exercise of the police power by the County. We rejected a similar claim in *Edmonds*.

■ ■ ¶32 Here, as in *Edmonds*, the local government acted under the specific legislative authority given to it under RCW 9.46.295 to ban gambling within its jurisdiction. To do so is undeniably the exercise of police power for the protection of the "public health, safety, and welfare," as we discussed in more detail in *Edmonds*. There is nothing in this case to distinguish it from that case insofar as our conclusion that the banning of gaming activities within a local government's jurisdiction pursuant to RCW 9.46.295 is a proper exercise of the police power.

¶33 We come to the central point of the second question: whether the regulation "seeks less to prevent a harm than to impose on those regulated the requirement of providing an affirmative public benefit." Paradise argued that it had made a substantial investment relating to obtaining the enhanced license under the pilot program. Paradise appears to argue that its substantial investment in modifying its premises to participate in the pilot program shows that it bears the economic burden of providing a public benefit—regulating gambling. This argument is not persuasive.

¶34 We examine this particular part of the analysis by consideration of the analysis on this point in *Sintra, Inc. v. City of Seattle*.[20] There, developers challenged on taking and other grounds a city ordinance that required them to contribute to the costs of tenant relocation. Citing *Presbytery of Seattle v. King County*,[21] the supreme court stated:

---

[20] 119 Wn.2d 1, 829 P.2d 765 (1992).
[21] 114 Wn.2d 320, 707 P.2d 907 (1990).

If the challenged regulation is merely an exercise of the police power to safeguard the public interest in health, safety, the environment, or fiscal integrity, it is not a taking. *Presbytery*, [114 Wn.2d] at 329[, 787 P.2d 907]. The regulation may be a taking, however, if it "goes beyond preventing a public *harm* [to] actually enhance [ ] a publicly owned right in property." [. . . ] The threshold test is designed to prevent undue chilling on legislative bodies' attempts to properly and carefully structure land use regulations which prevent public harms. It is permissible for legislative bodies to wield police power to prevent activities which are similar to public nuisances. In *Keystone*,[22] the Supreme Court discussed the difference between preventing harm and providing a benefit as follows:

> Under our system of government, one of the state's primary ways of preserving the public weal is restricting the uses individuals can make of their property. . . . Long ago it was recognized that "all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community," and the Takings Clause did not transform that principle to one that requires compensation whenever the state asserts its power to enforce it.
>
> . . . "[A] taking, is, in essence, a determination that the public at large, rather than a single owner, must bear the burden of an exercise of state power in the public interest," and we recognized that this question "necessarily requires a weighing of private and public interests."

(Footnotes and citations omitted.) *Keystone*, at 491-92. Thus, land use regulation in the nature of restricting nuisance-like activity is permissible. But regulations which enhance public interests, and go beyond preventing harmful activity, may constitute a taking.[23]

The court went on to hold that a taking did occur in that case because there was an affirmative answer to one of the two basic threshold questions.

¶35 Here, the ordinance regulates gambling activities, which have been characterized as in the nature of a public

---

[22] *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 107 S. Ct. 1232, 94 L. Ed. 2d 472 (1987).

[23] *Sintra*, 119 Wn.2d at 14-15 (footnote and citation omitted).

nuisance.[24] The regulation is expressly authorized by state statute, RCW 9.46.295. And Paradise advances no persuasive argument that the state legislature has exceeded its authority by expressly authorizing the elimination of gambling activities within the jurisdiction of Pierce County. There simply is no showing that the ordinance goes beyond regulating a public harm in this case.

¶36 We note that the argument Paradise made in opposition to the motion to dismiss assumed affirmative answers to one or both of the threshold questions. Specifically, Paradise argued that (1) it had made a large investment to reconfigure its building to accommodate enhanced gaming with the County's knowledge and approval, (2) it had a reasonable investment-backed expectation that it would be allowed to conduct an enhanced gaming operation for sufficient time to recoup its investment, (3) the economic impact of the ordinance substantially destroyed the value of the investment, and (4) the County has no legitimate interest in enforcing the ordinance.

¶37 We said in *Edmonds* that, "[i]f the answer to both threshold questions is no, then there is no taking."[25] *If, however, the answer to either question is yes, we must determine "whether the regulation advances a legitimate state interest" and whether "the state interest in the regulation is outweighed by its adverse economic impact to the landowner."*[26]

¶38 Comparing the argument that Paradise made in its opposition to the motion to dismiss to the above statement of legal principles, it becomes clear that it skipped the second of the two threshold questions and proceeded directly to the taking analysis. But that is not the proper analysis. Rather, because in this case the answer to both threshold questions is no, there is no taking and further analysis of this aspect of the claim is not required.

---

[24] *City of Seattle v. Bittner*, 81 Wn.2d 747, 751, 505 P.2d 126 (1973); *Tarver v. City Comm'n*, 72 Wn.2d 726, 731, 435 P.2d 531 (1967).

[25] *Edmonds,* 117 Wn. App. at 362.

[26] *Edmonds,* 117 Wn. App. at 363 (emphasis added).

¶39 In sum, the negative answers to the two threshold questions in this case support our conclusion that no taking occurred by the County's passage of the ordinance that Paradise challenges in this appeal.

¶40 We conclude that the trial court should have granted the County's CR 12(b)(6) motion on this issue.

## SUBSTANTIVE DUE PROCESS

¶41 The County also argued in its CR 12(b)(6) motion that there was no substantive due process violation. We agree.

¶42 The test for violation of substantive due process considers "(1) whether the regulation is aimed at achieving a legitimate public purpose; (2) whether it uses means that are reasonably necessary to achieve that purpose; and (3) whether it is unduly oppressive on the landowner."[27] "Legislative enactments are presumed constitutional."[28]

¶43 The parties do not appear to dispute that the ordinance was aimed at achieving a legitimate public purpose. Thus, the first of the above considerations is not at issue in this case.

¶44 Paradise argues that the County had other means to address the problem of gambling. But the record shows that, because the County could not regulate gambling, a ban on gaming was the only means available to the County to realize the public purpose of stopping card room gaming. Thus, the second consideration is properly resolved in favor of the County.

¶45 That brings us to the third consideration: whether the regulation is unduly oppressive to the landowner. For this aspect of the test, we turn to our Supreme Court's

---

[27] *Edmonds*, 117 Wn. App. at 364 (citing *Presbytery*, 114 Wn.2d at 330).

[28] *Edmonds*, 117 Wn. App. at 364.

opinion in *Weden v. San Juan County*,[29] where the County banned the use of personal water craft in county waters.

¶46 There, the Supreme Court stated that the ban did not force water craft owners to remedy a problem that they did not create, and concluded that "[i]t defies logic to suggest an ordinance is unduly oppressive when it only regulates the activity which is directly responsible for the harm."[30] In this case, the ordinance bans only the gaming aspect of Paradise's business, which is the activity that was found to be offensive or damaging to the community. The rest of the business not dealing with gaming is unaffected. Thus, the regulation is not unduly oppressive to the landowner.

¶47 Because the governing criteria are satisfied, there was no substantive due process violation by passage of the ordinance. The court should have granted the CR 12(b)(6) motion on this ground as well.

## EQUITABLE ESTOPPEL

¶48 The County argues that the trial court incorrectly denied its motion to dismiss the equitable estoppel claim. We again agree.

¶49 "[E]quitable estoppel requires proof of (1) an admission, statement or act inconsistent with a claim later asserted; (2) reasonable reliance on that admission, statement, or act by the other party; and (3) injury to the relying party if the court permits the first party to contradict or repudiate the admission, statement or act."[31] Because equitable estoppel against the government is disfavored, success on such a claim requires that it be "necessary

---

[29] 135 Wn.2d 678, 707, 958 P.2d 273 (1998).

[30] *Weden*, 135 Wn.2d at 707.

[31] *Dep't of Ecology v. Theodoratus*, 135 Wn.2d 582, 599, 957 P.2d 1241 (1998) (citing *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 124 Wn.2d 816, 831, 881 P.2d 986 (1994)).

to prevent a manifest injustice"; in addition, the exercise of government functions must not be impaired as a result.[32]

> To establish equitable estoppel against the government, there must be proof by clear, cogent, and convincing evidence of an admission, act or statement that is inconsistent with a later claim, another party's reasonable reliance on the admission, act, or statement, and injury to the other party that would result if the first party is permitted to repudiate or contradict the earlier admission, act, or statement. The doctrine may not be asserted against the government unless it is necessary to prevent a manifest injustice and it must not impair the exercise of government functions.[33]

¶50 The County contends that the trial court erred in finding that "closure of [Paradise's] facility . . . would cause a substantial economic injury to [Paradise]" and that "it would be manifestly unjust for [Paradise] to have to close its facility on August 15, 2002," and to the finding that the County knew that it would take 5 to 10 years for Paradise to amortize its investment. Paradise argues that the County's act of issuing the building permit created a reasonable expectation that the County would allow the gambling operation to continue for a "reasonable period of time," equating a reasonable period of time with a period sufficient to allow it to recoup its investment. But the fact that Paradise might lose money on its investment did not effect a manifest injustice here, where RCW 9.46.295 clearly and specifically stated that the County could ban all gambling at any time. There is no guaranty in the statute that any gambling operation could recoup its investment if gambling was banned. Paradise knew of this possibility and chose to take the risk as a business decision. The fact that the County took action that Paradise knew all along that it might take did not work a manifest injustice in this case.

¶51 The County also argues that the trial court erred in finding that "continued operation of [Paradise's facility]

---

[32] *Theodoratus*, 135 Wn.2d at 599.

[33] *Campbell v. Dep't of Soc. & Health Servs.*, 150 Wn.2d 881, 902-03, 83 P.3d 999 (2004) (citation omitted).

would not impair any governmental functions of Pierce County." We agree.

¶52 The police power of government entities encompasses " 'all legislation and almost every function of civil government' " and " 'embraces regulations designed to promote public convenience or the general prosperity or welfare.' "[34] In *Edmonds*, we stated that a city's adoption of an ordinance banning card rooms under RCW 9.46.295 was a reasonable exercise of the city's police power. Far from impairing any government function, such a reasonable exercise of police power in order to promote the public health, safety, and welfare is in fact such a function. The finding that continuing operation of the card room in this case did not impair any government function is erroneous because it would prevent the County from pursuing the government function of banning gaming within its proprietary limits.

¶53 We conclude that the trial court should have granted the CR 12(b)(6) motion to dismiss this claim as well.

## EQUAL PROTECTION AND PREEMPTION

¶54 On cross-appeal, Paradise argues that the trial court erred in granting the County's motion to dismiss its equal protection and preemption claims. We hold that neither argument is persuasive.

¶55 As we have explained earlier in this opinion, we review de novo the trial court's denial of a motion to dismiss for failure to state a claim upon which relief may be granted under CR 12(b)(6).[35] Paradise argues that the ordinance violated equal protection because it exempted bona fide charitable or nonprofit gaming as set out in RCW 9.46.0311.[36] An ordinance violates equal protection if it (1)

---

[34] *Clark v. Dwyer*, 56 Wn.2d 425, 432, 353 P.2d 941 (1960) (citations omitted).

[35] *Cutler*, 124 Wn.2d at 755.

[36] The statute authorizes "bona fide charitable or nonprofit organizations" to conduct certain gambling activities.

applies unequally to members within a designated class; (2) has no real basis to distinguish between those in and outside the class; and (3) has no rational relation to the purpose of the ordinance.[37] A legislative enactment is presumed to be constitutional, and the burden is on the party challenging the statute to prove beyond a reasonable doubt its unconstitutionality.[38]

¶56 In this case, the ordinance exempted charitable, nonprofit gaming as described in RCW 9.46.0311 from the ban. The statute created this class of gaming and a separate class of for-profit gaming establishments, of which Paradise is a member. Different rules apply to the distinct classes. Paradise fails to show these classifications lack a rational basis, the proper test for this equal protection challenge. Moreover, the ordinance does not apply unequally to members within either class. All charitable gaming is exempted, and all for-profit gaming is banned. We conclude that there was no equal protection violation in this case.

¶57 Paradise also argues that state law preempted the County's regulation of gambling embodied in the ordinance. Paradise argues that exempting charitable gaming violates this exception. But the statute provides that the local jurisdiction "may absolutely prohibit . . . any or all of the gambling activities *for which the license was issued*."[39] Paradise had a license to engage in for-profit gaming under the pilot program; the County prohibited this gaming under the terms of the statute. The statute did not preempt this prohibition.[40]

---

[37] *Myrick v. Bd. of Pierce County Comm'rs*, 102 Wn.2d 698, 701, 677 P.2d 140 (1984).

[38] *Island County v. State*, 135 Wn.2d 141, 146, 955 P.2d 377 (1998).

[39] RCW 9.46.295 (emphasis added).

[40] Because Paradise did not argue any other ground for preemption, we need not address this subject further.

## OTHER ISSUES

¶58 Because we conclude that the trial court erred in denying the County's CR 12(b)(6) motion to dismiss, we need not decide whether the gaming license is a property right. The issue is moot. Likewise, we need not address the issues regarding jury instructions.

¶59 We reverse the Final Judgment and Judgment on Jury Verdict.

COLEMAN and BECKER, JJ., concur.

Review denied at 154 Wn.2d 1027 (2005).